**Christ ROUSSEFF, Plaintiff,**

v.

**DEAN WITTER & CO., INC., Defendant.**

**Civ. No. F 75–128.**

United States District Court,
N. D. Indiana,
Fort Wayne Division.

June 20, 1978.

Martin T. Fletcher, David Travelstead, Fort Wayne, Ind., for plaintiff.

Thomas W. Yoder, Edward L. Murphy, Jr., Fort Wayne, Ind., for defendant.

## MEMORANDUM OF DECISION AND JUDGMENT ORDER

ESCHBACH, Chief Judge.

On February 27–28, 1978, this securities action was tried to a jury, by special interrogatories, on three counts. Each count represented a claim based upon a separate legal theory: (1) federal securities law, *i. e.* 15 U.S.C. § 78j(b) [Section 10 of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder]; (2) Indiana "Blue Sky" law, *i. e. Ind.Code* § 23–2–1–19; and (3) common law fraud. The action is now before the court for entry of judgment based upon the jury's answers to the special interrogatories and the court's determination regarding defendant's pretrial motion to dismiss those claims based upon Indiana "Blue Sky" law.[1] For the reasons set forth below and based upon the jury's answers to the special interrogatories, the court will enter judgment for defendant and against plaintiff on the federal securities law and common law fraud claims. The court will deny defendant's motion to dismiss the state securities law claim and will enter judgment for plaintiff and against defendant on that claim.

Plaintiff is an individual residing in Fort Wayne, Indiana. Defendant is a securities broker-dealer registered under both federal and Indiana securities laws. The factual occurrences underlying the instant action involve a 1973 stock transaction handled for plaintiff by certain employees of defendant. These employees were located in defendant's Sarasota, Florida, and New York offices.

In late summer 1973, plaintiff owned 7,000 shares of the real estate investment

---

1. Defendant's motion to dismiss the state securities law claim was filed only shortly before the date set for the trial of this action and raised several complex questions of law. Since these complex issues could not be adequately considered before trial, the court reserved the issues for post-trial briefing and consideration.

trust U.S.F. Investors, Inc. (USF).[2] Plaintiff had purchased these shares in an over-the-counter market transaction earlier in 1973 for $27.50 per share. That transaction was handled for plaintiff by Aaron Fleck, who was then an employee of Walston & Co., another registered securities broker-dealer. As the over-the-counter market price of USF declined in late summer 1973, plaintiff became concerned about his investment and began to consider the possibility of effecting a "wash sale" to realize his paper loss in USF for the tax year ending December 31, 1973. By late September 1973, USF's price had declined to about $21.00 per share, giving plaintiff a paper loss of approximately $45,000.00.

It was under these circumstances that plaintiff called Aaron Fleck in late September 1973 to inquire about the condition of USF. By the time of this telephone call, Aaron Fleck had left the employ of Walston & Co. and had joined defendant, in charge of defendant's then newly opened Sarasota, Florida, office. It was to this Florida office that plaintiff made his telephone inquiry. Fleck's response to plaintiff's questions was that he did not have the information but would obtain it from defendant's stock analyst for the real estate investment trust industry, a Mr. Kearns located in defendant's New York office. After contacting Kearns, Fleck telephoned plaintiff in Fort Wayne, Indiana, and advised him that, according to Kearns, USF was a good, sound company; that USF's market price decline would not continue; that USF would continue to pay dividends; and that plaintiff could safely purchase it to effect his "wash sale" transaction. Fleck did not tell plaintiff that defendant, through its analyst Kearns, had in fact classified USF as a "grade 3 weak hold," nor did Fleck explain the significance of this classification.[3]

On October 4, 1973, plaintiff purchased, through Fleck, 7,000 additional shares of USF capital stock. He purchased these shares for $22.25 per share. Subsequent to this purchase, USF failed to pay any dividends and its market price continued to decline. Finally, approximately two years later, on December 15, 1975, plaintiff disposed of all of his USF shares for fifty-five cents ($.55) per share. He seeks, by this action, to recover the loss he sustained as to the 7,000 USF shares purchased in October 1973.

Based upon evidence establishing the foregoing factual background, which was essentially undisputed by the parties, and other evidence presented in the trial of this cause, the jury returned its answers to the special interrogatories presented to it by the court. Based upon the answers to these special interrogatories, the jury found:[4]

That defendant made a material misleading omission regarding its opinion of the condition or value of USF [Special Interrogatories 1, 2, 3, and 4];

That plaintiff reasonably relied upon defendant's misleading omission in purchasing the 7,000 shares in October 1973 [Special Interrogatory 4];

That defendant did not act knowingly or recklessly in making the misleading omission [Special Interrogatories 7, 8, 9, and 10];

That defendant did act negligently in making the misleading omission [Special Interrogatory 11];

That plaintiff unreasonably failed to mitigate his damages by not disposing of the USF shares prior to December 15, 1975 [Special Interrogatory 12]; and

That had plaintiff reasonably mitigated his damages, he would have disposed of

---

2. USF Investors, Inc., has changed its name to Independence Mortgage Trust. The designation USF will be used throughout this memorandum of decision and judgment order.

3. The "grade 3 weak hold" classification is given to stocks not favored for "longer term" holdings. Defendant describes these stocks as

something "we do not wish to retain in client portfolios . . . we consider them a logical source of funds on a price increase." See Plaintiff's Exhibit 2.

4. A complete copy of the jury's answers to the special interrogatories is attached hereto as Appendix "A".

the USF shares on November 12, 1973 [Special Interrogatory 13].[5]

 The jury's answers to the special interrogatories clearly establish the legal inadequacy of the plaintiff's federal securities law and common law fraud claims. Both of these claims require an element of *scienter* not proven by plaintiff. Plaintiff has established only that defendant was negligent in making the misleading omission. Special Interrogatories 7–11. The federal securities law claim, *i. e.* the claim based upon 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, cannot be established on a mere finding of negligence. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033 (7th Cir. 1977). The common law fraud claim also requires an element of *scienter* and cannot be based on mere negligence. *See, e. g., Soft Water Utilities, Inc. v. LeFevre,* 159 Ind.App. 529, 308 N.E.2d 395 (1974); *Physicians Mutual Ins. Co. v. Savage,* 156 Ind.App. 283, 296 N.E.2d 165 (1973). Therefore, judgment will be entered for the defendant and against the plaintiff on the federal securities law and the common law fraud claims.[6]

If plaintiff is to recover in this action, the recovery must be based upon his state "Blue Sky" law claim, *i. e.* the claim asserted under *Ind.Code* § 23–2–1–19. It is toward this claim that defendant has directed its motion to dismiss. Defendant contends

(1) that Indiana securities law does not provide a private action for negligent misrepresentation; (2) that to the extent Indiana securities law does provide a private action for negligent misrepresentation, such law is pre-empted by the federal securities law; and (3) that even if such state securities law is not pre-empted by federal securities law, it is invalid, as here applied, as an unconstitutional burden on interstate commerce. The court has considered, and rejects, each of these arguments. Therefore, judgment will be entered for plaintiff and against defendant on the state securities law claim.

### APPLICATION OF THE STATE SECURITIES LAW

 Before turning to defendant's federal law challenges, the court must determine what version of the state securities law applies to this action and what result that version of the law effects.[7] Plaintiff's cause of action arose from conduct occurring in late 1973. This action was not commenced until November 1975. Between these two dates, the Indiana securities law was substantially amended. *See* Indiana Acts 1975, P.L. 261, p. 1402 [codified at *Ind.Code* § 23–2–1–1 *et seq.* (Burns Supp. 1977)]. While it is not clear that the amendments substantively altered the existing securities law, the court finds it unnecessary to determine what substantive changes, if any, were effected by these amendments.

---

5. November 12, 1973 is the date the defendant informed the plaintiff of the "grade 3 weak hold" classification. USF was selling for $15.00 per share on that date, *i. e.* the "high bid" for USF in the over-the-counter market on that date was $15.00 per share.

6. Even though the jury has foreclosed recovery on the federal law claim which established the original jurisdiction for this action, the court has determined to exercise its discretionary pendent jurisdiction to decide the state securities law claim. *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972).

7. The parties apparently concede, or at least have not contested, that under traditional choice of law analysis the Indiana securities law applies to this action, *i. e.* if the application of state law is not totally barred in these cir-

cumstances by either federal pre-emption or the commerce clause, then Indiana law is the proper state law to apply. The court agrees with this choice of law. Indiana's securities law is designed to protect investors who operate within the State of Indiana. Plaintiff is a resident, and citizen, of the State of Indiana. Defendant is a corporation properly registered as a securities broker-dealer under the securities law of Indiana. Plaintiff initiated the stock transaction now at issue from this state. Defendant provided information regarding this transaction to plaintiff in this state. Plaintiff took delivery of the stock certificates in this state. The court finds that as a matter of choice of law, the preponderance of contacts with the State of Indiana warrants application of this state's securities law.

█ Indiana law provides that substantive amendatory acts are to be construed only prospectively unless retroactive application is specifically provided by the legislature. *See, e. g., State ex rel. Mental Health Com'r v. Estate of Lotts,* Ind.App., 332 N.E.2d 234 (1975); *Slater v. Stoffel,* 140 Ind.App. 131, 221 N.E.2d 688 (1966). More specifically, it is recognized under Indiana law that "an amendatory act which changes prior law must by necessary implication repeal the prior law insofar as they are in conflict." *State ex rel. Mental Health Com'r v. Estate of Lotts,* Ind.App., 332 N.E.2d 234, 238 (1975). The effect of such a repeal is governed by *Ind.Code* § 1–1–5–1, which provides in part:

> The repeal of any statute shall not have the effect to release or extinguish any . . . liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purposes of sustaining any proper action . . . for the enforcement of such . . . liability. . . .

Since the 1975 amendments contained no provision extinguishing liabilities arising under the former law, this court will apply the substantive securities law of Indiana as it existed when this action arose in 1973. Under these same Indiana rules of law, however, procedural changes contained in an amendatory act are applied to actions pending at the time of, or brought subsequent to, their enactment. *See, e. g., Slater v. Stoffel,* 140 Ind.App. 131, 221 N.E.2d 688 (1966). Thus, plaintiff is entitled to the new three-year statute of limitations, as well as the increased rate of interest which is to be applied to damage awards as a result of the 1975 amendments. *See Ind. Code* § 23–2–1–19 (Burns Supp.1977).

█ In 1973, the civil liability provision of the Indiana securities law provided:

> Any person who . . . offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him . . . . Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest . . . from the date of disposition.

Indiana Acts 1961, ch. 333, § 507, p. 984 [formerly codified at *Ind.Code* § 23–2–1–19(a)(2)]. Both this provision and Section 410(a)(2) of the Uniform Securities Act, on which it is based, are drawn nearly verbatim from Section 12(2) of the Federal Securities Act of 1933, 15 U.S.C. § 77*l.* Section 12(2) of the 1933 Act has consistently been interpreted to impose a negligence standard. *See, e. g., Franklin Savings Bank of New York v. Levy,* 551 F.2d 521 (2d Cir. 1977); *Anno.,* 50 A.L.R.2d 1228 (1956). The Indiana securities law provision, identical in all material respects to the federal law, must also be read to impose a negligence standard. *Cf. Hidell v. International Diversified Investments,* 520 F.2d 529 (7th Cir. 1976). Therefore, the court finds that Indiana securities law does provide a basis for recovery where, as here, a negligent omission to state a material fact is proven.[8]

---

**8.** Defendant argues that even if recovery may be based upon a negligent omission to state a material fact, such a recovery may not be based upon a negligent omission to state an opinion. Defendant then asserts that the jury's answers to the special interrogatories evidence only a finding that defendant negligently failed to state a material opinion it held concerning the value or condition of USF. Therefore, defendant concludes that plaintiff may not recover under the state securities law. The court need not determine whether the state securities law would support recovery based only on the failure to state an opinion, since the court finds, based upon the jury's answers to the special interrogatories, that there was an omission of a material fact—even though that material fact does arise from an opinion held by defendant.

As the United States Court of Appeals for the Second Circuit has noted, "[t]he distinction between [facts and opinions] is appreciated if at

Thus, unless plaintiff's state securities law claim is pre-empted by federal securities law or is invalid as an unconstitutional burden on interstate commerce, plaintiff is entitled to recover on the state securities law claim.

## PRE–EMPTION OF THE STATE SECURITIES LAW

■ The touchstone of a pre-emption claim is the intent of Congress. *See, e. g., Malone v. White Motor Corp.,* 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). This intent may be found in the express provisions of the federal legislation or, absent an expressed intent, may be found in the very nature of the federal legislation. For example, the federal legislation might be so pervasive that it leaves no room under the Supremacy Clause for state action, or the federal legislation might be found to involve such a dominant federal interest that pre-emption may be assumed. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). In this instance, the answer is found in the expressed intent of Congress.

■ Section 16 of the Securities Act of 1933, 15 U.S.C. § 77p, provides that "[t]he rights and remedies provided by this subchapter shall be in addition to any and all other rights and remedies that may exist at law or in equity." Section 28 of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb, provides essentially identical treatment under that act's provisions. The court finds in these provisions a clear and unequivocal congressional expression not to pre-empt state securities laws. Defendant's argument that these savings provisions should be limited to state laws in effect at the time of the passage of the federal laws is without merit. As the Supreme Court of the United States recently stated:

[W]hen a State's exercise of its police power is challenged under the Supremacy Clause, 'we start with the assumption that the historic police powers of the States were not superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' *Rice v. Santa Fe Elevators Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

*Ray v. Atlantic Richfield Corp.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). There is no indication of a "clear and manifest purpose of Congress" to pre-empt state securities laws which were enacted subsequent to the 1933 and 1934 federal securities laws. In fact, it is quite apparent that Congress did not intend to pre-empt subsequent laws but only to supplement them and the existing laws with federal regulations.

■ The court's finding that the federal securities laws were not intended to be pre-emptive of state regulation does not, however, completely foreclose defendant's pre-emption argument. Even when total pre-emption is clearly not intended, state statutes are still void, under the Supremacy Clause, to the extent that they conflict with valid federal legislation. *E. g., Ray v. Atlantic Richfield Corp., supra.* Thus, the final question on this issue is whether this state law directly conflicts with, and is repugnant to, the federal provisions. The court finds that it is not.

The substantive provisions of the state and federal statutes here at issue are essentially identical. *Compare* Indiana Acts 1961, ch. 333, § 507, p. 984 [formerly codified at *Ind.Code* § 23–2–1–19(a)(2)] *with* 15 U.S.C. § 77*l.* The only potential conflict,

times difficult to make." *Franklin Savings Bank of New York v. Levy,* 551 F.2d 521, 527 (2d Cir. 1977). This court also appreciates the difficulty of this distinction. However, in the instant cause, the actionable material fact which defendant omitted is that it held an opinion of USF's value contrary to those statements actually made to plaintiff. *Cf. Marx v. Computer Sciences Corp.,* 507 F.2d 485 (9th Cir.

1974); *G&M, Inc. v. Newbern,* 488 F.2d 742 (9th Cir. 1973). The jury found this omission, in light of the statements which were made, to be material to plaintiff's investment decision. The court now holds that defendant's failure to disclose the fact that it held an opinion contrary to the statements made by it concerning the value or condition of USF is actionable under the Indiana securities law.

and the one now asserted by defendant, concerns the statute of limitations applicable to such actions. The federal action under 15 U.S.C. § 77*l* must be brought within one year of the discovery of the omission (or within one year after such discovery reasonably should have been made) and in no event can the federal action be maintained more than three years after the sale at issue. 15 U.S.C. § 77m. The state action, however, provides a general three-year statute of limitations. *Ind.Code* § 23–2–1–19(e) (Burns Supp.1977). Thus, in the instant action, plaintiff's cause is barred under the federal law but not under the state law.

Defendant contends that these varying limitations periods create a direct conflict in the statutes and that, therefore, the state statute must yield, under the Supremacy Clause, to the federal legislation. This court disagrees since it finds no direct conflict which is actually repugnant to the federal legislation.

▮ The conflict necessary to invalidate state legislation under the Supremacy Clause requires more than a mere difference in the legislation. As the Supreme Court of the United States has recently noted in reaffirming well-established rules of law:

> A conflict will be found "where compliance with both federal and state regulations is a physical impossibility . .," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *Jones v. Rath Packing Co., supra,* 430 U.S. [519] at 526, 540–541, 97 S.Ct. [1305] at 1310, 1316–1317 [51 L.Ed.2d 604].

*Ray v. Atlantic Richfield Corp.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994–995, 55 L.Ed.2d 179 (1978). Since the substantive provisions of the state and federal laws at issue are identical, defendant has no basis for arguing that compliance with both is impossible. Therefore, if the state law is to fail, it must be because the longer limitations period in the state provision is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." In this regard, it might be argued that Congress, in providing for recovery based upon negligent omissions, intended to provide a shorter limitations period to protect potential defendants from stale claims. Undoubtedly this is true. However, the primary purpose behind the federal securities laws and specifically Section 12(2) of the 1933 Act is to protect the investing public by insuring that it receives full disclosure of the information necessary to effect informed and rational securities transactions. Congress' choice of limitations periods reflects its reasoned compromise in these conflicting goals. So, too, does Indiana's choice of limitations periods. The issue, then, is whether Indiana's reasoned compromise is repugnant to Congress' reasoned compromise on these conflicting goals, *i. e.* does Indiana's law stand as an obstacle to the "full purposes and objectives of Congress."

▮ The court finds that there is no such repugnancy in these laws. Undeniably, there is a conflict of sorts in that the laws are different. The Indiana limitations period, however, does not directly conflict with, nor is it repugnant to, the primary purpose of the federal securities law, *viz.* promoting full disclosure in securities transactions. In fact, Indiana law enhances that purpose.

▮ This action, as the case of *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), presents a situation where the state and federal regulation are directed toward the same overall purposes. In both cases, the state legislation imposes a higher procedural standard in furtherance of the overall substantive objectives than does the federal legislation. In *Florida Lime and Avocado Growers,* the United States Supreme Court found that there was no pre-emption under the Supremacy Clause even though the state law at issue did impose a higher standard. That result must also obtain in this

instance. *Cf. Colorado Anti-Discrimination v. Continental Air Line, Inc.,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963). Therefore, the court finds that where, as here, the state law enhances the primary and overall purpose of the federal law, it is not invalid under the Supremacy Clause.

## STATE SECURITIES LAW AS AN UNCONSTITUTIONAL BURDEN ON INTERSTATE COMMERCE

Defendant contends that application of the Indiana "Blue Sky" law, here at issue, to this interstate securities transaction would result in an unconstitutional burden on interstate commerce. Defendant has, however, produced no evidence on the extent of this alleged burden, nor has it even specifically identified the nature of the alleged burden. Defendant has made some general references to the need for a uniform, nationwide standard of fair disclosure, but these references would be more appropriately directed toward the pre-emption argument and, as the court has previously shown, that argument, too, must fail. In any event, such vague references are insufficient, without more, to warrant invalidating Indiana's securities law.

 It is now well established that a state statute will not be found to be an unconstitutional burden on interstate commerce—

> [w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental . . . unless the burden imposed on such commerce is clearly excessive in relation to the local benefits.

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). In this action, there is no contention, nor could there be, that the state law is not applied even-handedly, *i. e.* there is not the slightest intimation that the state law is designed to or does procure any benefit to the State of Indiana at the expense of her sister states or that the act impermissibly discriminates in any other manner against interstate commerce. *See, e. g., Boston*

*Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977). Nor has there been any contention that the state's securities law does not effectuate a "legitimate local public interest," *i. e.* protection of investors operating from within the state. This protection undeniably is provided through the state's exercise of its widely recognized and long-established valid police powers. *See Hall v. Geiger-Jones Co.,* 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 (1916); *Caldwell v. Sioux Falls Stock Yards Co.,* 242 U.S. 559, 37 S.Ct. 224, 61 L.Ed. 493 (1916); *Merrick v. N. W. Halsey & Co.,* 242 U.S. 568, 37 S.Ct. 227, 61 L.Ed. 498 (1916). *See also Travelers Health Ass'n v. Commonwealth of Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) (Douglas, J., concurring). The court further finds that any effect on interstate commerce produced by this legitimate exercise of police power is purely incidental.

For defendant to prevail on its interstate commerce defense, it is incumbent upon the defendant to prove that the incidental burden imposed "on such commerce is clearly excessive in relation to the local benefits." *Pike v. Bruce Church, Inc., supra.* Defendant has offered no proof to establish this "excessive" burden. Therefore, defendant having failed to carry the burden of establishing its defense, the defense must fail.

## PLAINTIFF'S RECOVERY

 Having determined that plaintiff must prevail on his state securities law claim, the court turns to a determination of his damages. The applicable state law provides that plaintiff shall recover as damages the amount he paid for the securities less the value of the securities when he disposed of them, plus interest on the damages at the rate of eight percent per annum from he date of disposition, reasonable attorney's fees, and costs of the action. Although plaintiff did not dispose of the securities in this action until December 15, 1975, the jury found that, had he reasonably mitigated his damages, he should have disposed of the stock on November 12, 1973. The court has used this latter date as the date

of disposition in computing both plaintiff's damages and the interest to be recovered on those damages.

Plaintiff purchased the 7,000 shares of USF on October 4, 1973 for $22.50 per share, a total of $155,750.00. The shares were selling for $15.00 per share on November 12, 1973, a total of $105,000.00. Thus, plaintiff's damages equal $50,750.00. Interest on that amount from November 12, 1973 to the date of judgment at eight percent per annum, equals $18,608.00.

 In addition to his damages and interest, plaintiff's counsel has submitted a verified affidavit stating that a total of 372.3 hours were devoted by counsel to the prosecution of this action over the past three years. The court accepts this figure as reasonable under the circumstances of this action and finds a reasonable rate for these services to be $50.00 per hour, a total of $18,615.00.

## JUDGMENT

Accordingly, it is hereby ordered, adjudged, and decreed that judgment be, and it hereby is, entered in favor of Plaintiff Christ Rousseff on his securities law claim under *Ind.Code* § 23–2–1–19 and against Defendant Dean Witter & Co., Inc. Plaintiff shall have and recover of and from defendant the sum of eighty seven thousand nine hundred seventy-three dollars and no cents ($87,973.00) as damages, interest, and reasonable attorney's fees; plus costs.

It is further ordered, adjudged, and decreed that judgment be, and it hereby is, entered in favor of Defendant Dean Witter & Co., Inc., and against Plaintiff Christ Rousseff on the plaintiff's claims under federal securities law and common law fraud.

## APPENDIX "A"

### SPECIAL INTERROGATORIES

(1) Did plaintiff prove by a preponderance of the evidence that defendant made an untrue statement or misleading omission regarding

 (a) the then present factual condition or value of USF or its shares? ___ No
 Yes or No

 (b) an opinion of the then present condition or value of USF or its shares, or projections, forecasts, or opinions of the future condition or value of USF or its shares? Yes
 Yes or No

If your answers to <u>both</u> (1)(a) and (1)(b) were "No," do not answer the remaining questions. If your answer to either (1)(a) or (1)(b), or both, was "Yes," proceed to (2).

(2) Did plaintiff prove by a preponderance of the evidence that the untrue statement or misleading omission was material? Yes
 Yes or No

If your answer to (2) was "No," do not answer the remaining questions. If your answer to (2) was "Yes," proceed to (3).

(3) Did plaintiff prove by a preponderance of the evidence that he reasonably relied on defendant's untrue statement, if any,

 (a) in retaining the seven thousand shares purchased .in February 1973? __No__
 Yes or No

 (b) in purchasing the seven thousand shares in October 1973? __No__
 Yes or No

(4) Did plaintiff prove by a preponderance of the evidence that he reasonably relied on defendant's misleading omission, if any,

 (a) in retaining the seven thousand shares purchased in February 1973? __YES__
 Yes or No

 (b) in purchasing the seven thousand shares in October 1973? __YES__
 Yes or No

(5) Did defendant prove by a preponderance of the evidence that plaintiff did not reasonably rely on defendant's untrue statement, if any, in purchasing the seven thousand shares in October 1973? __No__
 Yes or No

(6) Did defendant prove by a preponderance of the evidence that plaintiff did not reasonably rely on defendant's misleading omission, if any, in purchasing the seven thousand shares in October 1973? __No__
 Yes or No

If your answers to (3)(a), (3)(b), (4)(a), and (4)(b) were all "No" and if your answers to (5) and (6) were both "Yes," do not answer the remaining questions. If your answer to (3)(a), (3)(b), (4)(a), or (4)(b) was "Yes" or if your answer to (5) or (6) was "No," proceed to (7).

(7) Did plaintiff prove by a preponderance of the evidence that defendant, in making the untrue statement or misleading omission, if any, regarding the then present factual condition or value of USF or its shares, acted knowingly at that time in regard to plaintiff's

 (a) retention of the seven thousand shares purchased in February 1973? __No__
 Yes or No

 (b) purchase of the seven thousand shares in October 1973? __No__
 Yes or No

(8) Did plaintiff prove by a preponderance of the evidence that defendant, in making the untrue statement or misleading omission, if any, regarding an opinion of the then present condition or value of USF or its shares, or projections, forecasts, or opinions of the future condition or value of USF or its shares, acted knowingly at that time in regard to plaintiff's

 (a) retention of the seven thousand shares purchased in February 1973? __NO__
 Yes or No

 (b) purchase of the seven thousand shares in October 1973? __NO__
 Yes or No

(9) Did plaintiff prove by a preponderance of the evidence that defendant, in making the untrue statement or misleading omission, if any, regarding the then present factual condition or value of USF or its shares, acted recklessly at that time in regard to plaintiff's

 (a) retention of the seven thousand shares purchased in February 1973? __No__
 Yes or No

 (b) purchase of the seven thousand shares in October 1973? __No__
 Yes or No

(10) Did plaintiff prove by a preponderance of the evidence that defendant, in making the untrue statement or misleading omission, if any, regarding an opinion of the then present condition or value of USF or its shares, or projections, forecasts, or opinions of the future condition or value of USF or its shares, acted recklessly at that time in regard to plaintiff's

> (a) retention of the seven thousand shares purchased in February 1973? ___No___
> Yes or No

> (b) purchase of the seven thousand shares in October 1973? ___No___
> Yes or No

(11) Did defendant prove by a preponderance of the evidence that it did not know, and in the exercise of reasonable care could not have known, that its

> (a) statements were untrue? ___No___
> Yes or No

> (b) omissions were misleading? ___No___
> Yes or No

(12) Did defendant prove by a preponderance of the evidence that plaintiff unreasonably failed to mitigate his losses by not disposing of the shares until December 1975? ___YES___
> Yes or No

If your answer to (12) is "No," do not answer (13). If your answer to (12) is "Yes," proceed to (13).

(13) If your answer to (12) was "Yes," on what date did defendant prove by a preponderance of the evidence that

plaintiff, under the circumstances, should have reasonably disposed of the shares? NOVEMBER 12, 1973
(Specify the date)

Dated this 28 day of February, 1978.