OPINION OF THE COURT
Lester Sacks, J.
In this personal injury action, plaintiff an employee of Horn Waterproofing Corporation (Horn) sues defendants, *452 Getty Refining and Marketing Co. and Cross and Brown Company (sued here as Cross & Brown, Inc.), as owners of a building at 660 Madison Avenue in New York City, for failure to provide the proper safety equipment and protection pursuant to section 240 and subdivision 6 of section 241 of the New York State Labor Law.
Horn had been hired by defendant owners to make repairs on two water towers located on the roof of said building. Plaintiff and another worker were directed by Horn to make repairs. In the process plaintiff fell from one of the towers and suffered severe injuries. The present action was instituted and defendant owners impleaded Horn as third-party defendant. A verdict was reached in favor of plaintiff with defendant owner being found 5% responsible for plaintiff’s injuries and Horn 95%.
At the close of Horn’s case defendant moved to dismiss plaintiff’s action claiming section 240 and subdivision 6 of section 241 of the Labor Law have been pre-empted by the Federal Occupational Safety and Health Act of 1970. Defendant alternatively moves for a directed verdict against third-party defendant Horn for common-law indemnity and also for contractual indemnity.
 All three motions are denied.
Turning to the first issue, whether the Occupational Safety and Health Act (OSHA) pre-empts sections 240 and 241 of the New York Labor Law, defendant owner claims the Federal act places the onus of responsibility upon the employer while the New York law places it on the owner and contractor and that this incongruence results in confusion thus defeating the purpose of OSHA which then prevails because of the supremacy clause.
On the surface the defendant’s argument is seemingly tenable but upon closer scrutiny it dissipates into something chimerical.
Several levels of analysis are required to determine whether a Federal statute pre-empts State law. (See Pharmaceutical Soc. of State of N. Y. v Lefkowitz, 586 F2d 953; Ray v Atlantic Richfield Co., 435 US 151; Northern States Power Co. v State of Minnesota, 447 F2d *453 1143.) Initially, since intent is the touchstone of preemption (Rousseff v Witter & Co., 453 F Supp 774) it must be determined whether Congress, in passing OSHA, intended to pre-empt State law and if so then the scope of the pre-emption must be analyzed. (See Florida Avocado Growers v Paul, 373 US 132; Greenwald v First Fed. Sav. & Loan Assn, of Boston, 446 F Supp 620.) The design of Congress and the scope of that design may be determined from its express manifestation or, if this is not possible, may be deduced by: (1) examining the nature of the subject matter — whether Federal interest dominates, by (2) considering the pervasiveness of Federal regulation and by (3) comparing the Federal objective and the State objective to resolve whether they are compatible. (See Pharmaceutical Soc. of State of N. Y. v Lefkowitz, supra; Ray v Atlantic Richfield, supra; Florida Avocado Growers v Paul, supra.) If after such examination the first questions are answered in the affirmative, the last in the negative then no other conclusion but preemption is possible and. the State law must fall. (See Florida Avocado Growers v Paul, supra.)
In the present case there is no question from examining the statute that Congress intended to pre-empt State regulation in the field of occupational health and safety if the States failed to meet OSHA criteria. (See US Code, tit 29, § 667; see, also, US Code, Cong & Admin News, 1970, vol 3, p 5194.) However, the scope of such preemption, its parameters ánd the interrelation of OSHA and related State legislation have not been clearly delineated. Accordingly, a cursory review of the pertinent OSHA sections, the purpose of the act and relevant case law is in line.
OSHA, signed into law December 29, 1970, was enacted with the express purpose: “to assure so far as possible every working man and woman * * * safe and healthful working conditions” (US Code, tit 29, § 651, subd [b]). The bill would achieve its purpose through programs of research, education and training, through the development and administration by the Secretary of Labor of uniformly applied occupational safety and *454 health standards. (US Code, Cong & Admin News, 1970, vol 3.)
The hub of this network is the employer-employee relationship. Educational and training programs are targeted to employers and employees. Safety and health standards and the duties and liabilities stemming from them are likewise so aimed. (US Code, tit 29, § 654.) As' stated in Senate Report No. 91-1282, the rationale for this is that: “Employers have primary control of the work environment and should ensure that it is safe” (US Code, Cong & Admin News, 1970, vol 3, p 5186). Enforcement of the employer’s obligations is accomplished through work place inspections, usually during working hours by OSHA personnel. (US Code, tit 29, § 657.) When violations of standards are found, citations are issued and penalties suggested (US Code, tit 29, § 658). An employer may contest citations in an administrative review with such decision in turn reviewable before the United States Court of Appeals (US Code, tit 29, § 660). In addition where no specific standard is yet applicable, the employer has a general duty to furnish each of his employees with places of employment free from recognized hazards (US Code, tit 29, § 654, subd [a], par [1]; see, also, US Code, Cong & Admin News, 1970, vol 3, p 5185). Employees on the other hand though obligated to comply with applicable standards are not subject to citations or penalties for failing to do so. It is left to the employer to discipline errant employees. (1 Employment Safety and Health Guide Rep [CCH], par 506; see, also, par 506 for general outline of the act.)
In light of the above discussion, it must be stressed that the act corpus is devoid of mention, either directly or in passing concerning the obligations or liabilities of persons other than the employer and employee. This conspicuous silence has been interpreted by the Occupational Safety and Health Review Commission and the courts, both State and Federal, as signifying that OSHA was not intended to cover the owner of the premises where work is being done. (Cochran v International Harvester Co., 408 F Supp 598; Hare v Federal Compress & Warehouse Co., 359 F Supp 214.) Furthermore, OSHA *455 does not create a private cause of action for the employee against either his employer or the owner of the premises. (National Mar. Serv. v Gulf Oil Co., 433 F Supp 913; Jeter v St. Regis Paper Co., 507 F2d 973; Skidmore v Travelers Ins. Co., 356 F Supp 670; Hare v Federal Compress & Warehouse Co., supra; Otto v Specialties, Inc., 386 F Supp 1240; Buhler v Marriott Hotels, 390 F Supp 999; Dravo Corp. v Occupational Safety & Health Review Comm., 613 F2d 1227; Knight v Burns, Kirkley & Williams Constr. Co., 331 So 2d 651 [Ala]; Frith v Harrah South Shore Corp., 92 Nev 447.) Rather the act is remedial in nature (Marshall v Whirlpool Corp., 593 F2d 715; Bristol Steel & Iron Works v Occupational Safety & Health Review Comm., 601 F2d 717), intended to prevent first injury (Nowlin Constr. Co. v Occupational Safety & Health Review Comm., 593 F2d 368; Arkansas-Best Frgt. Systems v Occupational Safety & Health Review Comm., 529 F2d 649). This is quite contrary to tort law the aim of which is to compensate the injured party (see B & B Insulation v Occupational Safety & Health Review Comm., 583 F2d 1364 [where employee sued employer]; Green Mountain Power Corp. v Commissioner of Labor & Ind., 136 Vt 15). Indeed the act itself supports the above interpretation with section 653 (subd [b], par [4]) of title 29 of the United States Code stressing that OSHA shall not be construed “to supersede or * * * affect workmen’s compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, liabilities of employers and employees”.
Thus, though pervasive, OSHA is not exclusive. Within the sphere of the employer-employee relationship, more specifically with respect to the promulgation and enforcement of safety and health standards affecting that relationship, the act, unless a State enacts a safety and health plan approved by OSHA, pre-empts State law. Once outside this sphere, however, the hold of the act over State action is relatively weak and diminished. By juxtaposing the statutory interpretation just presented with two basic tenets of our Federal system, namely: that State laws are not easily pre-empted when enacted *456 pursuant to its police power (see Dixie Dairy Co. v City of Chicago, 538 F2d 1303; Simpson v Alaska State Comm, for Human Rights, 423 F Supp 552; ITT Lamp Div. of Int. Tel. & Tel. Corp. v Minter, 435 F2d 989) and also that a State’s interest in fashioning its own rules of tort law is paramount to any discernible Federal interest except where the State acts arbitrarily (Martinez v California, 444 US 277), this point is clearly underscored.
With this in mind let us turn to section 240 and subdivision 6 of section 241 of the New York State Labor Law.
In abbreviated form subdivision 1 of section 240 as amended in 1969 provides that all contractors and owners and their agents, in the construction, demolition or repairing of a building or structure are obligated to provide or erect for such labor the appropriate safety devices or equipment. Similarly subdivision 6 of section 241, also amended in 1969, in essence says that owners and contractors and their agents with respect to areas in which construction, excavation or demolition work is being performed, have a duty to provide reasonable and adequate protection and safety to persons employed there or lawfully frequenting such premises.
Painted in broad brushstrokes there is no difference between the purpose of these sections, namely, the protection of workmen (NY Legis Ann, 1969, p 407), and the aim of OSHA. However, by making the owner and contractor, not the employer, responsible for safety, the New York law diverges from the employer-employee relationship and regulates an area, though interconnected, not covered by the Federal act (see Haimes v New York Tel. Co., 46 NY2d 132, 137 [for discussion of term “all workmen”]).
Moreover, while the system used by OSHA to promote safety consists of inspections of worksites and citations and penalties conferred upon the employer, the New York law relies upon the threat of private lawsuit for damages brought by the injured workman to motivate the owner or contractor. As set forth by the Court of Appeals in Allen v Cloutier Constr. Corp. (44 NY2d 290, 299), the intent of the New York Legislature in amend *457 ing section 241 (and § 240) was: “to give the workman in the hazardous employment of construction, demolition and excavation added protection, other than workmen’s compensation, in the form of nondelegable duties cast upon the owner and general contractor with ensuing liability for breach of those duties”.
Defendant owner adverts to the New Jersey Superior Court decision in Five Migrant Farmworkers v Hoffman (136 NJ Super 242) in support of his contention that sections 240 and 241 have been pre-empted by OSHA. Defendant’s reliance is misplaced. In Hoffman, a class action was brought against the New Jersey Labor Commissioner who pursuant to an agreement with the Federal Secretary of Labor, discontinued State-authorized preoccupancy inspections of farm camps. The inspections were stopped after the New Jersey Legislature failed to enact the required legislation to continue the OSHA-approved New Jersey Occupational Safety and Health Plan. As a result OSHA pre-empted the pertinent State statutes. Parenthetically, the act encourages States to develop their own job safety and health programs. (US Code, tit 29, § 651, subd [b], par [11]; US Code, Cong & Admin News, 1970, vol 3, p 5194.) When a State plan is submitted to OSHA and approved, the State has three years to incorporate the plan into State law. During this time OSHA monitors the plan’s enforcement. Incorporation results in the State assuming exclusive jurisdiction over occupational health and safety. Failure to incorporate within three years effects reversion of exclusive jurisdiction over issues covered by the Federal program in OSHA (1 Employment Safety and Health Guide [CCH], par 506). New York had submitted a plan which was approved by OSHA on May 22, 1973, but by letter to OSHA, Governor Carey of New York withdrew the plan from consideration, effective July 1, 1975. (1 Employment Safety and Health Guide [CCH], par 5630.) Sustaining the State commissioner’s decision, the New Jersey Superior Court said that OSHA is so broad as to “encompass the entire gamut of migrant worker protection in the field of inspection and minimum standards of migrant workers’ housing quarters.” (Five Migrant *458 Farmworkers v Hoffman, supra, p 246.) Thus, since inspections of worksites are within the sphere of OSHA activity, State action which authorizes the inspection of migrant worker camps is of necessity pre-empted, if the State is without an OSHA-approved plan.
This conclusion, however, is inapplicable to sections 240 and 241 of the Labor Law which as previously stated do not come within the purview of OSHA. Congress may pre-empt an entire field by passage of broad based statutes even though regulations passed pursuant to the statute do not in fact cover every aspect (Bessemer & Lake Erie R. R. Co. v Pennsylvania Public Utility Comm., 430 Pa 339). Such was not the intendment of OSHA. For under the act, in addition to leaving intact common-law rights and duties of employer and employee, a State can take jurisdiction over any occupational safety or health issue to which there is no Federal standard. (US Code, tit 29, § 667, subd [a]; Green Mountain Power Corp. v Commissioner of Labor & Ind., 136 Vt 15, supra.)*
Yet given this, State statutes may still be void under the supremacy clause, even when Federal laws were not intended to be pre-emptive of State legislation if the State statutes conflict with Federal law (Rousseff v Witter & Co., 453 F Supp 774, supra) and obstruct the purposes of Congress. (Florida Avocado Growers v Paul, 373 US 132, supra.) With respect to pre-emption this is the final level of analysis and more particularly to the case at hand, the core of the issue.
According to defendant there is no way to properly enforce both the New York State Labor Law and OSHA without occlusion of the Federal act. Allusion is made by defendant to a well-ensconced New York policy that to make more than one class liable to do a particular act will only confuse matters (Komar v Dun & Bradstreet Co., 284 App Div 538; Wright v Belt Assoc., 14 NY2d 129; Cangiano v Lo Bosco & Son, 23 AD2d 860) and that *459 such is the case when sections 240 and 241 focus their obligations upon the owner and contractor while OSHA concentrates only on the employer.
However, defendant owner misconstrues the effect of sections 240 and 241 upon the Federal act by confusing the terms liability and duty.
There is no question that the duties imposed by sections 240 and 241 are nondelegable (Haimes v New York Tel. Co., 46 NY2d 132, supra; Allen v Cloutier Constr. Corp., 44 NY2d 290, supra; NY Legis Ann, 1969, p 408). But as the Appellate Division, Second Department, said in Monroe v City of New York (67 AD2d 89) the term “nondelegable duty” refers to the party who is charged with the duty and not to the nature of the duty itself. Indeed “the law always was that the duties could be delegated but that first instance liabilities which arose from breach of the duties could not be delegated” (Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., 35 NY2d 1, 7). The New York Legislature in its memorandum accompanying the 1969 amendment acknowledges this distinction: by imposing primary liability upon the owner and contractor it was hoped that they would be more inclined to choose subcontractors employing adequate safety measures rather than basing their choice largely on price (NY Legis Ann, 1969, pp 407-408).
Furthermore, the owner and general contractor can protect themselves against liability caused by the subcontractor/ employer’s carelessness by shifting the burden through a contractual indemnification agreement (NY Legis Ann, 1969, p 408). Such agreements are common practice in the construction and repair field (see Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., 35 NY2d 1, supra; Monroe v City of New York, 67 AD2d 89, supra; Allen v Cloutier Constr. Corp., 44 NY2d 290, supra; Porter v Avlis Contr. Corp., 86 Misc 2d 235; Rocha v State of New York, 77 Misc 2d 290) and not against public policy — provided the agreement concerns indemnification for vicarious liability and not for the negligence which directly caused the injury. (General Obligations Law, § 5-322.1.)
*460 Similarly in the wake of Dole v Dow Chem. Co. (30 NY2d 143) contribution is also available under the right to common-law indemnity (see Carinha v Action Crane Corp., 58 AD2d 261; Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., 35 NY2d 1, supra). As the Court of Appeals recounted in Kelly (supra, p 5), an owner or contractor would not have been able, prior to Dole, to claim indemnity or contribution because section 240 and subdivision 6 of section 241 imputed to them active negligence in the form of breach of duty and the law at that time prohibited active tort-feasors from obtaining indemnification partial or complete. (2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.16.) But as a result of Dole the active tort-feasor may now seek an apportionment of damages against a third party responsible either in whole or in part for the tort. (See Dole v Dow Chem. Co., 30 NY2d 143, supra.)
Indeed, though common-law definitions are still adhered to, there has been a blurring of the distinctions between indemnity and contribution. No longer is the right to indemnification based entirely on contract theory, express or implied. (See 28 NY Jur, Indemnity, § 1.) Rather, indemnity like contribution is also rooted in a substantive right to an apportionment of damages among joint tort-feasors (2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.09a). The upshot of this is the creation of a spectrum encompassing the concepts of indemnity and contribution and measuring among joint tort-feasors the degrees of direct responsibility in percentages with a percent liability for one tort-feasor giving him the right to indemnification from the others and any greater percentage for said tort-feasor affording him the right to contribution. (2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.03.)
Thus while the ov/ner or contractor may not escape liability under section 240 and subdivision 6 of section 241 of the Labor Law they may, when relying upon a subcontractor/employer to provide for worksite safety, recover from him the amount of damages they were assessed resulting from his failure to so provide. Alternatively, should the owner or contractor be found to share *461 with the subcontractor/employer in the direct cause of the accident they would be entitled to contribution from him.
Whether by delegating the duties imposed under sections 240 and 241 or by shifting the burden of liability via indemnity clauses or common-law indemnity, the general practice in this jurisdiction is to place the onus for ensuring safety of the worksite upon the subcontractor or employer. As such there is no conflict with OSHA. In fact, with the Federal act relying upon inspections and citations to reach its goal and New York law giving the injured worker an additional avenue of relief beyond workers’ compensation, both laws augment each other and enhance the protection offered workers to a degree greater than each could possibly achieve separately. Hence, this court would be remiss of the spirit and intention of both Congress and the New York Legislature to declare sections 240 and 241 pre-empted.
In light of the above discussion, let us now examine the defendant owner’s third-party action against Horn for common-law indemnity, and in the alternative contractual indemnity.
Despite the jury verdict holding defendant owner 5% responsible and Horn 95% responsible, defendant owner claims it is only vicariously liable for the tort involved and that it is entitled to full indemnification. Suffice it to say that common-law indemnity refers to a total shifting of economic loss to the party chiefly responsible (28 NY Jur, Indemnity, § 1). Such principle is inapplicable to the situation as exists here where the direct cause of damages is proportioned between two tort-feasors. Instead the laws of contribution govern. As was previously mentioned, although there has been, in effect, a melding of the concepts of indemnity and contribution since Dole, the common-law principles which give each its distinctive character are still existent. Thus defendant owner, because of his first instance liability, is entitled to contribution from Horn to the extent of 95% of the damages awarded plaintiff.
*462 Defendant owner also contends that to the extent it is found liable to plaintiff it will be entitled to contractual indemnity from third-party defendant Horn. Its argument is predicated on the following language in the work order sent to Horn: “By accepting this order contractor or vendor agrees to * * * 2. Forever hold harmless the owner and agent against all claims by third parties for personal injury * * * arising under the performance of this order”.
In sum defendant owner submits that though Horn did not sign the work order it nevertheless commenced work and billed the job pursuant to the work order number and that this conduct evidenced Horn’s intent to be bound by the agreement. To further buttress its position defendant owner attempts to establish a course of dealing between the parties by placing before the court a series of work order forms accepted by Horn which pertain to previous job arrangements between the two. All the forms contain the same indemnity agreement. Finally, case law is cited by defendant owner, the import of which is to sustain the above-phrased agreement and similarly worded clauses as clearly demonstrating an intent to indemnify, in this case defendant owner for liability incurred through its own negligence. (See Levine v Shell Oil Co., 28 NY2d 205; Murray v Rupp Rental Corp., 39 AD2d 637.) No other evidence is introduced on this subject.
Assuming, arguendo, that both defendant owner and Horn intended the indemnity clause to be part of the contract, for it is not clear from the evidence adduced that such intent was present, this court pursuant to section 5-322.1 of the General Obligations Law must declare the clause void and unenforceable. That section, previously cited above, provides in part that a promise, agreement or understanding to indemnify or hold harmless the promisee against liability for his sole negligence is void and unenforceable as against public policy where such agreement is found in or collateral to a contract or agreement related to the construction, alteration, repair or maintenance of a building structure. Significantly, the *463 cases relied upon by defendant owner concern agreements made prior to the effective date of the statute, August 7, 1975.
Whether defendant owner was found solely liable for plaintiff’s injuries, or as in this case, held only for a small percentage of the liability there is no logical distinction; the same public policy considerations still apply: in essence, to eradicate a common form of economic coercion whereby contractors and subcontractors, in order to be awarded a particular project are obligated at great expense to assume liability for the negligence of others by contract. As a result of the prohibitive insurance premiums this process fosters, the small contractor or subcontractor with limited resources is effectively disenfranchised. This practice can only be considered contrary to public policy in an economy where the construction industry contributes so significantly (see NY Legis Ann, 1975, p 311).
It must be stressed that section 5-322.1 of the General Obligations Law in no way impedes the indemnitee from seeking contribution nor from making a contract that indemnifies him for his first instance liability to plaintiff which results solely from the fault of another. The owner or contractor, with respect to cases arising under section 240 and subdivision 6 of section 241 of the Labor Law, may still shift the burden of loss to the party ultimately responsible for the tort, usually the subcontractor. However, should said owner or contractor be found directly, not derivatively, responsible for a portion of the injuries, his single remedy now is a right to contribution against the third-party tort-feasor for that person’s ratable responsibility. Defendant owner, in the case at hand, is likewise relegated to the same fate.

 Recently New York State has enacted as law a Public Employees Occupational Safety and Health Act (L 1980, ch 729). Section 3 of the act, in part, reiterates the general principles found in former section 28 of the New York State Labor Law whereby a State standard will not apply where an OSHA standard is in effect.