No. 01-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 152

TRACI L. DUKES, as Personal Representative of the Estate of KEITH
DUKES, and on her own behalf and on behalf of TRACI and KEITH DUKES'
Minor Children, JACOB DUKES and KYLE DUKES; and SANDRA HENRY,
as parent and legal guardian of SKYLER HAUCKE DUKES, a minor,

      Plaintiffs and Appellants,

   v.

SIRIUS CONSTRUCTION, INC,. a Montana corporation; PARADIGM
ARCHITECTS, P.C., CARL POSEWITZ, THE CITY OF MISSOULA,
THE STATE OF MONTANA, and THE UNIVERSITY OF MONTANA,
and FICTITIOUS DEFENDANTS A-D,

      Defendants and Respondents.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula, Cause No. DV-00-90,
                Honorable John W. Larson, Judge Presiding

COUNSEL OF RECORD:

      For Appellants:

            Lon J. Dale and James T. Towe, Milodragovich, Dale, Steinbrenner
            and Binney, P.C., Missoula, Montana

      For Respondents:

            William L. Crowley and Dean A. Stensland, Boone & Karlberg,
            Missoula, Montana (City of Missoula)

            Shelton C. Williams and Susan Moriarity Miltko, Williams & Ranney,
            P.C., Missoula (Paradigm & Posewitz)

            Robert J. Phillips and Fred Simpson, Jr., Phillips & Bohyer, P.C.,
            Missoula, Montana (University of Montana and State of Montana)

            Neil Ugrin and J. Michael Young, Great Falls, Montana (Sirius Construction)

                      Argued and Submitted:  February 26, 2002
                                Decided:  June 3, 2003

Filed:

_____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellants Traci L. Dukes, as personal representative of the Estate of Keith Dukes and on her own and her minor children's behalf, and Sandra Henry, on behalf of her minor child (hereafter referred to as "Dukes"), brought this action against the defendants in the Fourth Judicial District Court, Missoula County.  Defendant City of Missoula (City) moved the District Court to dismiss Dukes' complaint, alleging that any inspection or other duties imposed on it by Montana's Scaffolding Act in § 50-77-106, MCA (1997),[1] were preempted by the Occupational Safety & Health Act of 1970 (OSH Act) and the regulations promulgated thereunder by the Occupational Safety and Health Administration (OSHA). The District Court agreed and dismissed Dukes' complaint against the City, concluding that any duties imposed on the City by Montana's Scaffolding Act were preempted under federal law.  Dukes now appeals the District Court's dismissal of the complaint against the City. We reverse and remand.

¶2     We address the following issue on appeal:

¶3     **Did the District Court err when it concluded that the duty to inspect under Montana's Scaffolding Act, § 50-77-106, MCA, is preempted by the Occupational Safety & Health Act?**

*FACTUAL AND PROCEDURAL BACKGROUND*

¶4     The facts in this case, as reflected in Dukes' amended complaint, are as follows: On February 10, 1998, Keith Dukes, an employee of Sirius Construction, Inc. (Sirius), while in the course of his employment, was injured and eventually died as a result of his injuries.

---

[1] All citations to Montana Code Annotated herein refer to the 1997 code unless otherwise indicated.

2

Defendant Sirius was involved in performing services under a written contract with the University of Montana at the time of Keith Dukes' injuries. When the injury occurred, Keith Dukes was performing work for Sirius on the University of Montana campus.

¶5 In the amended complaint, Dukes alleged that, pursuant to the Montana Scaffolding Act, § 50-77-106, MCA, the City had a duty to conduct inspections to ensure that the other named defendants complied with the provisions of the Act, §§ 50-77-101 through -107, MCA. The Act required, in part, that employers follow safety practices commonly recognized in the construction industry as well as applicable state and federal occupational safety laws. *See* § 50-77-101(2), MCA.

¶6 Dukes alleged that the City failed to enforce Montana's Scaffolding Act by failing to perform the inspections required under § 50-77-106, MCA, and alleged that the City's failure to inspect constituted a breach of a legal duty and negligence *per se* under the Act.

¶7 The City thereafter filed a Rule 12(b)(6), M.R.Civ.P., motion to dismiss, arguing that Dukes' amended complaint failed to state a claim for which relief was available. The City argued that the Montana Scaffolding Act was preempted by the OSH Act and the OSHA regulations promulgated thereunder. The City argued therefrom that it could not owe a duty to Dukes under preempted state law, and likewise, that it did not owe a duty to Dukes under OSHA regulations because the regulations do not impose liability upon a third party who is not an employer of the worker. Absent an imposed legal duty, the City argued that there could be no negligence.

¶8 The District Court agreed and granted the City's motion to dismiss. The court concluded that Congress intended the OSH Act and OSHA regulations to occupy the field

3

of occupational safety and health regulation, thus preempting the safety standards set forth in the Montana Scaffolding Act as well as any enforcement provisions thereunder, except where the state has submitted a comprehensive plan pursuant to 29 U.S.C. § 667(b), and where that plan was approved by the Secretary of Labor. Montana has not done so. The District Court additionally concluded that the OSH Act savings clause, 29 U.S.C. § 653(4), while preserving private tort actions, does not save from preemption state occupational safety and health standards or their enforcement.

¶9      The District Court concluded, therefore, that the Montana Scaffolding Act could not impose a duty on the City to inspect and that, without a legal duty, the City could not be held liable for negligence arising under the Montana Scaffolding Act.

¶10     Dukes now appeals the District Court's dismissal of the claim against the City.

*STANDARD OF REVIEW*

¶11     This Court's standard of review of district court rulings on motions to dismiss under Rule 12(b)(6), M.R.Civ.P., is: A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim which would entitle the plaintiff to relief. *Reidelbach v. Burlington Northern and Santa Fe Ry. Co.*, 2002 MT 289, ¶ 14, 312 Mont. 498, ¶ 14, 60 P.3d 418, ¶ 14. A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. *Reidelbach*, ¶ 14 (citation omitted). The District Court's determination that Dukes failed to state a claim for which relief was available is a conclusion of law. Our standard of

4

review of a district court's conclusion of law is whether its interpretation of the law is correct. *Reidelbach*, ¶ 14 (citation omitted).

*DISCUSSION*

**¶12 Did the District Court err when it concluded that the duty to inspect under Montana's Scaffolding Act, § 50-77-106, MCA, is preempted by the Occupational Safety & Health Act?**

¶13 In the District Court, the City argued that, by virtue of 29 U.S.C. § 667(b), the OSH Act preempted all state occupational safety and health standards as well as their enforcement, and that a state may develop and implement its own occupational safety and health plan only by submitting and receiving approval of its plan by the Secretary of Labor. Relying on *Gade v. National Solid Wastes Management Association* (1992), 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73, and *Industrial Truck Ass'n, Inc. v. Henry* (9th Cir. 1997), 125 F.3d 1305, the City argued that any non-approved state regulations are preempted even if they merely supplement the federal standard.

¶14 The City thus asserted that it could not owe a duty to Dukes for two reasons: first, any imposition of duty under the Montana Scaffolding Act was preempted; and second, citing to *Russell v. Bartley* (6th Cir. 1974), 494 F.2d 334, the OSH Act imposes a duty of care only on employers to care for employees, but imposes no duty of care on third party non-employers. Consequently, the City argued, violation of an OSHA regulation could not be the basis for a negligence cause of action.

¶15 Finally, relying on this Court's decision in *Thornock v. State* (1987), 229 Mont. 67, 69, 745 P.2d 324, 325, the City argued that this Court has already held that OSHA preempts

5

any duty to inspect where OSHA has promulgated regulations. This Court held in *Thornock* that the OSH Act and OSHA regulations impliedly preempted the entire field of regulating occupational safety and health issues. We thus held that OSHA preempted any duty of inspection imposed on the state by the Montana Safety Act of 1969. *Thornock*, 229 Mont. at 74-75, 745 P.2d at 328-29.

¶16 The District Court agreed with the City and, relying on this Court's decision in *Thornock*, concluded that Congress intended to wholly occupy the field of "assuring worker safety." The District Court concluded that, because OSHA preempted the Montana Scaffolding Act, the Act imposed no duty of care or duty to inspect on the City. The District Court thus determined that the only duty to inspect or duty to enforce safety standards arose under OSHA and that the only entity with responsibility for inspection and enforcement of scaffolding safety standards is the Secretary of Labor. Accordingly, the District Court dismissed Dukes' claim against the City, concluding that, without a legal duty, Dukes' claim against the City for negligence must fail.

¶17 On appeal, Dukes argues that neither the OSH Act nor OSHA regulations provide for express preemption, nor do they imply field preemption, and that the District Court thus erred in concluding that Montana's Scaffolding Act was preempted. Dukes argues that the City had distinct duties under the Act, including a duty to inspect and verify compliance with manufacturer specifications, state law and federal laws, and a duty to enforce compliance. Finally, Dukes argues that, in light of decisions in subsequent state and federal cases, *Thornock* was incorrectly decided.

6

¶18 The United States Supreme Court and this Court have repeatedly held that preemption is not easily favored. *See Favel v. American Renovation and Constr. Co.,* 2002 MT 266, ¶ 39, 312 Mont. 285, ¶ 39, 59 P.3d 412, ¶ 39; *also see Medtronic, Inc. v. Lohr* (1996), 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700, 715.

¶19 "Because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Favel*, ¶ 39 (citing *Sleath v. West Mont Home Health Services*, 2000 MT 381, ¶ 23, 304 Mont. 1, ¶ 23, 16 P.3d 1042, ¶ 23). The presumption against preemption can only be overcome by evidence of a clear and manifest intent of Congress to preempt state law. *Favel*, ¶ 39 (citations omitted).

¶20 There are three ways in which federal law may preempt state law. *Favel*, ¶ 40. The first is by express preemption, wherein Congress includes a preemption clause providing that state law will not apply in the area governed by the federal statute. Absent express preemption, this Court recognizes two types of implied preemption. The first is "field preemption," wherein the scheme of federal regulation is so pervasive or comprehensive that it is reasonable to infer that Congress intended to "occupy the field" and leave no room for supplementary state regulation. The second type of implied preemption is "conflict preemption." Conflict preemption manifests itself as an inability of state law to comply with federal law or where state law stands as an obstacle to the accomplishment and execution of

7

the full purposes and objectives of Congress. *Favel*, ¶ 40 (citing *Hillsborough County v.*
*Automated Medical Labs.* (1985), 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714,
721).

¶21 Dukes argues that neither express nor implied preemption exists here, and therefore,
the City had a duty under the Montana Scaffolding Act to inspect and enforce state, federal
and manufacturer standards.

¶22 Section 50-77-106, MCA (1997) [now repealed], of the Montana Scaffolding Act
provides:

> It is hereby made the duty of the building inspector, his deputy, or other
> authorities in any county, city, town, or village in the state, through the county
> attorney or any other attorney, in case of failure of such owner, person, or
> corporation to comply with this chapter promptly, to take the necessary steps
> to enforce the provisions of this chapter.

Section 50-77-101(2), MCA (1997), of the Act provides:

> Employers and employees shall follow safety practices commonly recognized
> in the construction industry as well as applicable state and federal occupational
> safety laws.

¶23 The City counters that even absent all types of preemption, the Montana Scaffolding
Act is inapplicable to the present case because implicit in the statute is a requirement that the
City receive notice of a violation in order to bring about the statutory duty to inspect. The
City also argues that Dukes did not set forth exactly which provisions of the Act that the City
allegedly failed to enforce. The District Court did not address either of these issues in its
order and those issues are beyond the scope of this Court's review of a district court's
granting of a motion to dismiss. We begin our discussion by addressing express preemption.

8

## A. Express Preemption

¶24    The City contends that 29 U.S.C. § 653(b)(4), expressly preempts Dukes' claims against the City.  That statute provides:

> Nothing in this Chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, disease, or death of employees arising out of, or in the course of, employment.

¶25    While the above statute contains no language of express preemption of state safety regulations, standards, inspections or enforcement, the City argues that the language of the statute "triggers" express preemption in light of Dukes' claims.  The City references Dukes' amended complaint and briefs in opposition to summary judgment, which contain explicit references to OSHA standards related to scaffolding.  The City explains, "the safety practices the City is alleged not to have enforced are OSHA standards.  Under Dukes' claims, OSHA standards would enlarge or affect common law or statutory rights, duties or liabilities." Citing to *Garay v. Missouri Pacific Railroad* (D.Kan. 1999), 38 F.Supp.2d 892, *Canape v. Petersen* (Colo. 1995), 897 P.2d 762, and *Hernandez v. Martin Chevrolet, Inc.* (Ohio 1995), 649 N.E.2d 1215, the City argues that allowing Dukes' claims would "enlarge or affect common law or statutory rights, duties or liabilities" in violation of § 653(b)(4).

¶26    The above three cases do not hold that § 653(b)(4) of the OSH Act expressly preempts state safety standards, but rather, hold that permitting negligence *per se* based upon violations of OSHA regulations would allow employees to circumvent workers' compensation laws or to forego the elements of a negligence cause of action, thereby

9

enlarging or diminishing duties owed by individuals to those injured in the course of their employment, contrary to the language and intent of § 653(b)(4). *See Garay*, 38 F.Supp.2d at 900-01; *Canape*, 987 P.2d at 767; *Hernandez*, 649 N.E.2d at 1216-17. Therefore, none of the holdings in the cited cases lead this Court to conclude that, absent explicit preemptive language, § 653(b)(4) somehow "triggered" express preemption.

¶27 Neither are the above cases relevant in the instant case. In Dukes' amended complaint, Dukes alleges that the City is negligent *per se*, not for violating OSHA standards, but for violation of § 50-77-106, MCA. As this appeal is here upon a motion to dismiss, the District Court did not consider whether the City may or may not be negligent *per se* for violation of § 50-77-106 of the Montana Scaffolding Act, and we decline to make such a ruling here, as such determination is properly reserved for remand.

¶28 Express preemption, by definition, must be clearly manifested. *Ohio Manufacturers' Association v. City of Akron* (6th Cir. 1986), 801 F.2d 824, 831. As no provision of the OSH Act contains explicit preemptive language, we conclude that 29 U.S.C. § 653(b)(4), contrary to the City's argument, does not expressly preempt state occupational safety and health standards or statutory duties.

**B. Implied Preemption**

### 1. Field Preemption

¶29    The District Court relied on this Court's decision in *Thornock*, which concluded that "state efforts to set and enforce standards have been superseded" and that the Secretary of Labor has the responsibility for enforcement and inspection. *See Thornock*, 229 Mont. at 76, 745 P.2d at 329. The City urges this Court to affirm based on *Thornock*, the United States Supreme Court's decision in *Gade* and the Ninth Circuit's decision in *Industrial Truck Association*, arguing that OSHA regulations are so comprehensive and pervasive as to make a reasonable inference that Congress left no room for supplementary state regulation, thereby implying field preemption.

¶30    We first turn to the United States Supreme Court's decision in *Gade*. *Gade* involved competing state and federal regulations relating to hazardous waste operations. In 1986 Congress enacted the Superfund Amendments and Reauthorization Act under which OSHA promulgated regulations on "Hazardous Waste Operations and Emergency Response," including detailed regulations related to worker training. *Gade*, 505 U.S. at 91, 112 S.Ct. at 2379, 120 L.Ed.2d at 80.

¶31    Two years later, the Illinois General Assembly enacted the Hazardous Waste Crane and Hoisting Equipment Operators Licensing Act and the Hazardous Waste Laborers Licensing Act, both of which also included detailed requirements related to worker training in relation to hazardous waste operations. *Gade*, 505 U.S. at 91, 112 S.Ct. at 2379, 120 L.Ed.2d at 80. The plaintiff in *Gade*, the National Solid Wastes Management Association,

11

brought a declaratory judgment action in the United States District Court against the Illinois Environmental Protection Agency (IEPA), seeking to enjoin IEPA from enforcing the Illinois licensing acts, claiming that the acts were preempted by the OSH Act and OSHA regulations. *Gade*, 505 U.S. at 94, 112 S.Ct. at 2380-81, 120 L.Ed.2d at 81-82.

¶32     Reading the OSH Act as a whole, the United States Supreme Court determined that the OSHA regulations were "not intended to be all encompassing" in the workplace. *Gade*, 505 U.S. at 96, 112 S.Ct. at 2382, 120 L.Ed.2d at 83.

> First, Congress expressly saved two areas from federal pre-emption. Section 4(b)(4) of the OSH Act states that the Act does not "supersede or in any manner affect any workmen's compensation law or . . . enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4).
>
> [Second], section 18(a) provides that the Act does not "prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no [federal] standard is in effect." 29 U.S.C. § 667(a).

*Gade*, 505 U.S. at 96-97, 112 S.Ct. at 2382, 120 L.Ed.2d at 83.

¶33     The Supreme Court further noted that Congress not only reserved the above two areas to state authority, "but it also, in § 18(b) of the Act, gave the States the option of pre-empting federal regulation entirely." *Gade*, 505 U.S. at 97, 112 S.Ct. at 2382, 120 L.Ed.2d at 83. Said section allows for any state that wishes to assume responsibility for development and enforcement of occupational safety and health standards where federal standards already exist, to submit a state plan for the development of such standards to the Secretary of Labor for approval, thereby preempting existing federal standards. *See* 29 U.S.C. § 667(b).

¶34 The Supreme Court concluded that:

> [N]onapproved state regulations of occupational safety and health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the full purposes and objectives of the OSH Act. The design of the statute persuades us that Congress intended to subject employers and employees to only one set of regulations, be it federal or state, and that the only way a State may regulate an OSHA-regulated occupational safety and health issue is pursuant to an approved state plan that displaces the federal standards.

*Gade*, 505 U.S. at 98-99, 112 S.Ct. at 2383, 120 L.Ed.2d at 84 (citation omitted).

¶35 The *Gade* Court ultimately held that "preservation of state authority in the absence of a federal standard presupposed a background pre-emption of all state occupational safety and health standards whenever a federal standard governing the same issue is in effect." *Gade*, 505 U.S. at 100, 112 S.Ct. at 2384, 120 L.Ed.2d at 85. Reading the OSH Act as a whole, this is the only conclusion consistent with a plain reading of 29 U.S.C. § 667(a) and (b).

¶36 We thus disagree with the City's argument that *Gade* holds or implies that the OSH Act or OSHA regulations were intended by Congress to preempt the entire field of occupational safety and health regulation absent submission of a state plan and approval of that plan by the Secretary of Labor pursuant to 29 U.S.C. § 667(b). In *Gade*, the United States Supreme Court clearly evinced Congress' intent in the OSH Act to preserve state authority to promulgate standards in the absence of OSHA regulations on a specific occupational safety and health issue, as well as preserving state workers' compensation law and common law and statutory rights, duties or liabilities of employers and employees. *Gade*, 505 U.S. at 96-100, 112 S.Ct. at 2382-84, 120 L.Ed.2d at 83-85.

13

¶37    We conclude that the City's argument also fails to consider the OSH Act as a whole. A precondition to the requirement that a state submit a plan for approval to the Secretary of Labor pursuant to 29 U.S.C. § 667(b), is an attempt by a state to regulate a specific occupational health and safety issue already regulated by OSHA. As 29 U.S.C. § 667(a), provides:

> Assertion of State standards in absence of applicable Federal standards. Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.

As noted by the United States Supreme Court in *Gade*, it was not the desire of Congress to impliedly preempt all state regulation of all occupational safety and health issues, but to preserve state authority to regulate safety and health issues in the absence of OSHA regulations on a particular issue, thereby subjecting employers and employees only to a single set of regulations, whether federal or state. *Gade*, 505 U.S. at 100, 112 S.Ct. at 2384, 120 L.Ed.2d at 85.

¶38    We agree with the City's interpretation of *Gade* only to the extent that the City contends that the OSH Act savings clauses do not save *supplemental* state regulation. As the Supreme Court stated, "the natural implication of [the savings clause] is that state laws regulating the same issue as federal laws are not saved, even if they merely supplement the federal standard." *Gade*, 505 U.S. at 100, 112 S.Ct. at 2384, 120 L.Ed.2d at 85. *Gade*, however, was not a field preemption case, and we find the City's reliance on *Gade* for the proposition that the OSH Act has preempted the entire field to be unpersuasive.

14

¶39     The City next relies on *Industrial Truck Ass'n, Inc. v. Henry* (9th Cir. 1997), 125 F.3d 1305, to support its field preemption argument.  In light of our above conclusion, we find the City's reliance on *Industrial* to be misguided.  The City quotes three passages wherein the *Industrial* Court interprets *Gade*.  However, the passages relied on by the City refute its own argument.  For instance, the City quotes from *Industrial* wherein the Court of Appeals stated:

> Thus, under the Occupational Safety and Health Act, as interpreted by *Gade*, *when OSHA promulgates a federal standard*, that standard totally occupies the field within the "issue" of that regulation and preempts all state occupational safety and health laws relating to that issue, conflicting or not, unless they are included in the state [approved] plan.

*Industrial*, 125 F.3d at 1311 (emphasis supplied).  The application of *Gade* by the Court of Appeals in *Industrial* led to its conclusion that "the plurality's preemption analysis extends to states with approved plans like California.  *Gade* refers to preemption of state regulation on an issue-by-issue basis." *Industrial*, 125 F.3d at 1311.

¶40     The State of California had submitted and received approval from the Secretary of Labor to preempt federal regulation with its own Safe Drinking Water and Toxic Enforcement Act.  A portion of the plan as enacted, however, had not been submitted to the Secretary of Labor for approval.  The narrow holding of the Ninth Circuit Court of Appeals in *Industrial* was that those state regulations which were not submitted to OSHA, insofar as they applied to a health and safety issue wherein OSHA regulations had already been promulgated, are not saved from preemption. *Industrial*, 125 F.3d at 1306.

¶41     Based on the foregoing, we find that neither *Industrial* nor *Gade* are field preemption cases, and neither case supports the City's position that OSHA regulations promulgated

15

under the OSH Act were intended to be so pervasive and comprehensive as to impliedly preempt all state regulation of occupational health and safety issues not approved by the Secretary of Labor.

¶42 The City's remaining authority in its field preemption argument is this Court's previous decision in *Thornock v. State* (1987), 229 Mont. 67, 745 P.2d 324. In granting the City's motion to dismiss, the District Court relied on *Thornock* in determining that Congress intended to occupy the field of "assuring worker safety." Relying on *Thornock*, the District Court stated that "[s]tate scaffolding safety standards and enforcement of those standards were pre-empted by the Act, and the Secretary of Labor has [the sole] responsibility for enforcement and inspection."

¶43 This Court decided *Thornock* five years prior to the United States Supreme Court decision in *Gade*. In light of the City's argument and the District Court's conclusion, we find it necessary to review our *Thornock* decision in light of *Gade* and in light of more recent cases from other jurisdictions.

¶44 The plaintiff in *Thornock*, Larry Thornock (Thornock) lost his arm at the elbow in a sawmill accident and sued the state pursuant to the Montana Safety Act of 1969, alleging that the state failed to inspect the sawmill as required by the Safety Act, thus allowing the sawmill to operate in a hazardous condition which led to the accident and the loss of the plaintiff's arm. *Thornock*, 229 Mont. at 69, 745 P.2d at 325. The district court granted summary judgment in favor of the state and against Thornock, concluding that the OSH Act and the federal safety standards for sawmills adopted thereunder preempted the statutory

16

duty of the state to inspect hazardous places of employment, and we affirmed its decision on appeal. *Thornock*, 229 Mont. at 69, 745 P.2d at 325.

¶45 On appeal, Thornock conceded at the outset that OSHA preempted the promulgation not only of safety standards relating to sawmill operation, but also conceded that OSHA preempted the "enforcement of such standards from the State's purview." *Thornock*, 229 Mont. at 70, 745 P.2d at 326. This Court accepted Thornock's concession without question or analysis. With this foundational assumption, we dismissed Thornock's reliance on the cases of *P & Z Co., Inc. v. District of Columbia* (D.C. 1979), 408 A.2d 1249, and *Berardi v. Getty Refining & Marketing* (N.Y. 1980), 107 Misc.2d 451, 435 N.Y.S.2d 212, both of which interpreted the savings clauses of the OSH Act consistent with the subsequent United States Supreme Court decision in *Gade*.

¶46 The appellants in *P & Z* received misdemeanor convictions for failing, as employers, to report employee injuries to the Industrial Safety Board as required under the District of Columbia Industrial Safety Act, and, on appeal, argued that 29 U.S.C. § 667 operated to explicitly preempt District of Columbia reporting requirements. *P & Z*, 408 A.2d at 1249-50. The Court of Appeals disagreed, stating:

> The term "standard" in this context is a word of art. The OSHA preemption subsections specifically apply only to standards promulgated by rule under § 655. In this regulatory scheme . . . the function [of information gathering and reporting] is not covered by the preemption provision since it is not considered a standard. The authority for OSHA to implement reporting requirements is set forth in separate OSHA provisions §§ 657(c) and 673, thereby removing the regulations from the preemption provision.

*P & Z*, 408 A.2d at 1250-51.

17

¶47     The *P & Z* Court thus determined that, although information gathering and reporting requirements were addressed by the OSH Act in §§ 657 and 673, states "may continue reporting efforts regardless of whether a state plan is in effect, since they may assert authority over any issue not covered by a § 655 standard." *P & Z*, 408 A.2d at 1251.

¶48     To the extent that this Court in *Thornock* addressed the decision in *Berardi*, we noted that "while OSHA was meant to be exclusive in the promulgation and enforcement of standards, a state may take jurisdiction over any safety issue on which there is no federal standard." *Thornock*, 229 Mont. at 71, 745 P.2d at 327.  However, this Court applied neither the holding in *Berardi* nor the holding in *P & Z*, but dismissed Thornock's reliance thereon because the allegations in his complaint–that the state failed to enforce OSHA standards–were contrary to his concession in the district court and on appeal that all state enforcement was preempted.  "Whereas *P & Z Co.* holds that a state or other local jurisdiction can exercise duties not preempted by OSHA, Thornock specifically incorporates into his complaint a duty preempted by OSHA–the right to enforce standards." *Thornock*, 229 Mont. at 71, 745 P.2d at 327.  This Court, therefore, did not address the merits of *P & Z* or *Berardi*.

¶49     Besides failing to directly address the OSH Act's savings clause under 29 U.S.C. § 667(a), this Court also made overly broad statements based upon misinterpretations of existing case law.  For example, citing to *New Jersey State Chamber of Commerce v. Hughey* (3rd Cir. 1985), 774 F.2d 587, 592, we stated that "[s]tate laws dealing with workers safety are preempted once OSHA enacts similar standards." *Thornock*, 229 Mont. at 72, 745 P.2d

18

at 327. *Hughey* does not stand for such an overly broad statement of general preemption, nor does a plain reading of the OSH Act savings clauses or the subsequent holding in *Gade* allow for it.

¶50    The *Hughey* Court addressed the question of whether the OSH Act preempted New Jersey's Worker and Community Right to Know Act, which required disclosure of substances that may pose environmental hazards. *Hughey*, 774 F.2d at 590. The Third Circuit Court of Appeals rejected the plaintiffs' contention that the OSH Act expressly preempted all provisions of New Jersey's Right to Know Act, holding that state laws are expressly preempted only to the extent that a federal standard regulating the same issue is already in effect. *Hughey*, 774 F.2d at 593.

¶51    In addressing implied, conflict preemption, the Court of Appeals in *Hughey* did not conclude that all "state laws dealing with workers safety are preempted once OSHA enacts similar standards," but rather, examined each of the approximately 30 sections of New Jersey's Right to Know Act to determine which individual sections conflicted with OSHA regulations. The Court of Appeals then severed from the surviving sections of the statute those sections found to conflict with federal law. *Hughey*, 774 F.2d at 594-98.

¶52    In another example, this Court relied on the case of *Ohio Manufacturers' Association v. City of Akron* (6th Cir. 1986), 801 F.2d 824, when making the overly broad conclusion that "OSHA was intended to establish a national standard . . . . To that degree, the court held that state workers' safety laws were preempted expressly." *Thornock*, 229 Mont. at 73, 745 P.2d at 328.

19

¶53    In *Ohio Manufacturers' Association*, the Sixth Circuit Court of Appeals addressed whether the City of Akron's "Right to Know" ordinance, regulating hazardous and toxic substances in the workplace, was preempted by the OSHA Hazard Communication Standard set forth in 29 C.F.R. § 1910. Consistent with the savings clause in 29 U.S.C. § 667(a), the Court of Appeals held that the city ordinance was preempted, but only "to the extent" that the ordinance attempted to regulate the presence of hazardous and toxic substances in the workplace. *Ohio Manufacturers' Association*, 801 F.2d at 834.

¶54    The Court of Appeals did not, as stated by this Court in *Thornock*, find express preemption of the city's workers' safety laws. To the contrary, the Court of Appeals concluded that "we cannot accept plaintiffs' contention that Congress expressly preempted local regulation by these provisions establishing a national standard. Furthermore, we agree with the trial court to the extent that express preemption, by definition, must be clearly manifested, especially when local health and safety provisions are endangered." *Ohio Manufacturers' Association*, 801 F.2d at 831.

¶55    Finally, this Court stated in *Thornock* that, "Thornock must persuade this Court that federal powers granted in OSHA do not relieve the State of its burden to inspect dangerous work sites." *Thornock*, 229 Mont. at 73, 745 P.2d at 328. This is completely wrong. The imposition of such a burden of proof is contrary to this Court's presumption that preemption is not easily favored and contrary to the assumption that the historic police powers of the states are not to be superseded by a federal act unless that was the clear and manifest purpose of Congress. *Favel,* ¶ 39; *Sleath*, ¶ 23. Furthermore, we have repeatedly held that the

20

presumption against preemption can only be overcome by evidence of a clear and manifest intent of Congress to preempt state law. *Favel*, ¶ 39. It was error for this Court to place the burden on Thornock to prove that duties under the Montana Safety Act were *not* preempted.

¶56    Based upon compound errors, this Court concluded in *Thornock*:

> It is plain from reading the Occupational Safety and Health Act that Congress intended to occupy the field of assuring worker safety. Congress accomplished this by setting minimum federal standards that all employers must meet. Thornock's argument that Congress did not occupy the field because it expressly included provisions in OSHA by which the various states could resume workers safety programs is not persuasive. In order to retain the right to set and enforce work safety rules, a state must submit to the Secretary of Labor a plan that is "at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 655 . . ." 29 U.S.C. § 667(c)(2). So while states may choose to exercise work safety programs, they may do so only on the federal government's terms. This field has been occupied by federal law.

*Thornock*, 229 Mont. at 73-74, 745 P.2d at 328.

¶57    Given this conclusion, it is understandable that the City relied on *Thornock* as an implied field preemption case. However, from our analysis and review of the case law thus far, it is clear that Congress did not intend for the OSH Act to expressly or impliedly preempt state law regulating occupational safety and health issues except where OSHA has promulgated standards on a particular issue. To the extent that *Thornock* held that the OSH Act expressly or impliedly preempted states from regulating any issue of occupational safety and health issues, *Thornock* is overruled.

¶58    Additionally, to the extent that this Court in *Thornock* dealt in any detail with the OSH Act savings clause in 29 U.S.C. § 653(b)(4), this Court merely stated: "It can be clearly determined from the language of this section that Congress did not mean to interfere with the

21

various states' workers' compensation schemes. Beyond that, Congress' intention is obscure." *Thornock*, 229 Mont. at 76, 745 P.2d at 330. Such conclusion is also incorrect.

¶59 Section 653(b)(4) not only provides that the OSH Act shall not be construed to supersede or affect workers' compensation law, but also that the OSH Act shall not enlarge or diminish or affect a state's common law or statutory rights, duties, or liabilities imposed on employers or employees with respect to injuries, disease or death of employees arising out of or in the course of employment. Thus, besides clear language that Congress did not mean to interfere with the various states' workers' compensation schemes, "[t]here is a solid consensus that section [653(b)(4)] operates to save state tort rules from preemption." *Pedraza v. Shell Oil Co.* (1st Cir. 1991), 942 F.2d 48, 53 (citing *National Solid Wastes Management Ass'n v. Killian* (7th Cir. 1990), 918 F.2d 671, 680, n. 9 (collecting cases); *Atlas Roofing Co. v. Occupational Safety Comm'n* (1976), 430 U.S. 442, 445, 97 S.Ct. 1261, 1264, 51 L.Ed.2d 464 (noting that OSHA establishes a new statutory duty on the part of employers and creates new remedies and stating: "Each remedy exists whether or not an employee is actually injured or killed as a result of the [unsafe or unhealthful] condition, and existing state statutory and common-law remedies for actual injury and death remain unaffected."); *People v. Chicago Magnet Wire Corp.* (Ill. 1989), 534 N.E.2d 962, 968 ("Congress expressly stated that OSHA was not intended to preempt two bases of liability that, like criminal law, operate to regulate workplace conduct and implicitly set safety standards–State worker's compensation and tort law.")) (further citations omitted); *also see York v. Union Carbide Corp.* (Ind. App. 3 Dist. 1992), 586 N.E.2d 861, 866.

22

¶60    The *Pedraza* Court further stated: "We are aware of no case which holds that OSHA preempts state tort law.  Rather, most courts have been concerned with how OSHA affects tort actions, not with whether it preempts state tort law.  Thus, every court faced with this issue has held that OSHA creates no private right of action." *Pedraza*, 942 F.2d at 52 (citations omitted).  "It is noteworthy as well that OSHA provides no replacement remedy for workplace injuries, disease or death caused to employees by suppliers of products used in the workplace.  As the Supreme Court has noted, '[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct.'" *Pedraza*, 942 F.2d at n. 7 (citation omitted); *also see Wickham v. American Tokyo Kasei, Inc.* (N.D. Ill. 1996), 927 F.Supp. 293, where the plaintiff brought a products liability action under state law for injuries suffered at work, allegedly the result of the defendant employer failing to place warning labels on containers with dangerous chemicals in violation of OSHA regulations. *Wickham*, 927 F.Supp. at 293-94.  The Court in *Wickham* found no preemption and allowed the plaintiff to proceed under state tort law for the employer's violation of an OSHA regulation, noting that the plaintiff's suit, "if successful, would not have the effect of creating any state imposed modification of OSHA standards and, thus, would not amount to state regulation.  Therefore, even if OSHA preempted state regulation of chemical labels and warnings, it would not preempt this particular cause of action." *Wickham*, 927 F.Supp. at 295.  The *Wickham* Court concluded:

> OSHA is a purely regulatory provision that creates no private right of action.
> Instead, it is enforced by fines or criminal prosecution.  Criminal prosecution
> or a fine payable to the federal government would not compensate the plaintiff
> for his alleged injuries.  If § 1910.1200(a)(2) did preempt a cause of action like

23

> plaintiff's based on a failure to warn, an employee would be without a remedy even when a defendant failed to comply with OSHA. It is obvious to this Court that Congress, in enacting a statute designed specifically to protect employees and others from such potential hazards, did not intend such a result.

*Wickham*, 927 F.Supp. at 295 (citations omitted).

¶61    In his concurrence in the Third Circuit Court of Appeals decision in *Ries, III v. National Railroad Passenger Corp.* (3rd Cir. 1992), 960 F.2d 1156, Judge Nygarrd reached a similar conclusion. "Section 653(b)(4) makes clear that OSHA was not intended to redefine or affect an employer's common law or statutory duties. OSHA's overriding purpose is to prevent workplace injuries. It is enforceable by administrative civil and criminal penalties. It, however, does not provide remedies to injured employees." *Ries*, 960 F.2d at 1168.

¶62    Based upon the foregoing, we reach a number of conclusions. First, Congress did not intend that state regulation of occupational safety and health issues be impliedly field preempted. Pursuant to 29 U.S.C. § 667(a), states can promulgate occupational safety and health standards and enforce them in the absence of OSHA standards regulating the same safety and health issue. Second, pursuant to 29 U.S.C. § 653(b)(4), Congress did not intend that the OSH Act affect state workers' compensation laws, nor that the Act enlarge or diminish state common law or tort law remedies available to injured workers. And third, Congress did not intend that the OSH Act create a right of action for injured workers, but to allow injured workers to pursue rights of action given by state law.

¶63    Having reached the conclusion that there is no field preemption of occupational safety and health issues by the OSH Act, it remains necessary to determine whether the duty of the

24

City to inspect under the Montana Scaffolding Act directly conflicts with the OSH Act and OSHA regulation of scaffolding standards and is preempted accordingly.

## 2. Conflict Preemption

¶64 As noted above, Congress intended that the OSH Act preserve state authority to regulate occupational safety and health issues in the absence of federal standard governing the same issue. *Gade*, 505 U.S. at 100, 112 S.Ct. at 2384, 120 L.Ed.2d at 85; *Hughey*, 774 F.2d at 593; *Ohio Manufacturers' Association*, 801 F.2d at 834. Where OSHA has promulgated regulations on a particular occupational safety and health issue, any state regulation of the same issue is preempted as in conflict with OSHA regulations, even if the state regulation merely supplements the federal regulation. *Gade*, 505 U.S. at 100, 112 S.Ct. at 2384, 120 L.Ed.2d at 85. As also noted, the intention of Congress was to subject employers and employees only to a single set of regulations, whether federal or state. *Gade*, 505 U.S. at 100-02, 112 S.Ct. at 2384-85, 120 L.Ed.2d at 85-86; *see also Wickham*, 927 F.Supp. at 295 (noting that state tort law claims are preempted only insofar as those claims are based upon the theory that a defendant should have complied with requirements that are *in addition* to OSHA standards) (citations omitted). Thus, any state safety or health standard related to scaffolding will be preempted if in direct conflict with OSHA scaffolding standards or even if merely supplemental to OSHA scaffolding standards. *Gade*, 505 U.S. at 100, 112 S.Ct. at 2384, 120 L.Ed.2d at 85.

¶65 Section 50-77-106, MCA, does not enumerate specific safety or health standards related to scaffolding. Rather, this provision provides that the building inspector or other

authorized person has a duty to inspect and enforce the provisions of the Montana Scaffolding Act through the county attorney, or other attorney, in the case of failure of the owner, person or corporation to comply with any part of the chapter. Because § 50-77-101(2), MCA, only requires employers and employees to follow "applicable" state and federal occupational safety laws as well as "safety practices commonly recognized in the construction industry," the enforcement provision, § 50-77-106, MCA, would not require the enforcement of state scaffolding standards or safety practices commonly recognized in the construction industry, as a preempted state standard or common safety practices could no longer be considered "applicable." Thus, the enforcement mechanism of § 50-77-106, MCA, could only be employed to enforce applicable federal standards, and therefore, the statute does not conflict with those federal standards by virtue of its reference to enforcement of the now preempted state standards and common safety practices.

¶66    The City maintains, however, that a state law requiring inspection and enforcement of federal standards "interferes with the methods by which the federal statute is designed to reach its goal" and that, pursuant to *Gade*, OSHA does not permit a state to assume an enforcement role without prior approval by the Secretary of Labor of the state's plan. However, the *Gade* Court did not so conclude. Rather, the *Gade* Court stated:

> The principle indication that Congress intended to pre-empt state law is § 18(b)'s statement that a State "shall" submit a plan if it wishes to "assume responsibility" for "development and enforcement . . . of occupational safety and health standards relating to any occupational safety and health issue with respect to which a Federal standard has been promulgated." The unavoidable implication of this provision is that a State may not enforce *its own occupational safety and health standards* without obtaining the Secretary's approval . . . .

26

*Gade*, 505 U.S. at 99, 112 S.Ct. at 2383, 120 L.Ed.2d at 85 (emphasis supplied). The *Gade* Court did not hold that state "enforcement" is generally preempted, but that enforcement of *its own* occupational safety and health standards is preempted. If the state wishes to impose an additional duty upon a non-employer to inspect for compliance by the contractor, subcontractor or builder with "applicable" federal regulations and to ensure enforcement of those standards, the imposition of such duty does not subject the employer to duplicative or supplemental occupational safety and health standards, and thus, does not stand as an obstacle to the accomplishment and execution of the full purposes or objectives of the OSH Act–namely, "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b).

¶67 Further, the "duty to inspect" is not a standard. An "occupational safety and health standard" is defined as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). As stated by the Court of Appeals in *Traudt v. Potomac Electric Power Co.* (D.C. 1997), 692 A.2d 1326:

> Courts must apply preemption analysis "narrow[ly]" with regard both to "whether Congress intended any pre-emption at all, . . . [and] to questions concerning the *scope* of its intended invalidation of state law . . . ." We explained in *P & Z Co. v. District of Columbia*, 408 A.2d 1249, 1250 (D.C. 1979), that "the OSHA preemption subsections specifically apply only to [federal] standards promulgated by § 655" of OSHA. Such a "standard" is a "requirement that directly, substantially, and specifically regulates occupational safety and health." *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 107, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). While OSHA standards specifically addressing employee safety in regard to work

27

> with and around electrical circuits . . . were in effect at the time of Traudt's accident, no regulation adopted at the time or since then suggests Congressional intent to preempt the general duty of care imposed by D.C.Code § 36-228(a).  Indeed, OSHA itself contains a "general duty" section comparable to § 36-228(a), *see* 29 U.S.C. § 654(a)(1)-(2), which plainly is not a "standard" promulgated under § 655.

*Traudt*, 692 A.2d at 1332 (emphasis in original) (citations omitted).

¶68    We find the Court's holding in *Traudt* to be persuasive and consistent with a plain reading of 29 U.S.C. §§ 653(b)(4) and 667(a), the former preserving a right of action under state law to an injured or killed employee, and the latter preserving the authority of the state to enact occupational safety and health standards other than where OSHA has promulgated standards under 29 U.S.C. § 655.  *Also see Gade*, 505 U.S. at 96-100, 112 S.Ct. at 2382-84, 120 L.Ed.2d at 83-85, and *P & Z*, 408 A.2d at 1250-51.  We thus disagree with the City's argument that the duties to inspect and enforce under the Montana Scaffolding Act are preempted by 29 U.S.C. § 657, which authorizes the Secretary of Labor to enter, inspect and investigate places of employment in order to carry out the purposes of the OSH Act.  *P & Z,* 408 A.2d at 1250-51.  There is no language in the Act itself that contemplates that inspection and enforcement of applicable standards, even if only federal standards, are the sole responsibility of the Secretary of Labor, and inspection and enforcement of federal safety and health standards by a state official will be preempted only if such inspection and enforcement is in conflict with the OSH Act by frustrating its purpose and objectives.  As noted by the *Traudt* Court, the OSH Act contemplates that occupational safety and health standards promulgated under 29 U.S.C. § 655 will preempt state standards on the same occupational safety and health issue.  The duty to inspect and enforce applicable regulations is not a

standard as contemplated under the OSH Act, and the imposition of such duty does not subject employers or employees to duplicative regulation. *Gade*, 505 U.S. at 100, 112 S.Ct. at 2384, 120 L.Ed.2d at 85.

¶69 Therefore, the building inspector's duty to inspect and enforce compliance with applicable regulations, which, in this case, are OSHA scaffolding standards, survives conflict preemption. Based on that conclusion, we hold that the District Court erred in concluding that the entirety of the Montana Scaffolding Act is impliedly field preempted by the OSH Act and OSHA regulations, thereby preempting Dukes' negligence claim for the City's alleged failure to inspect and enforce applicable federal occupational safety and health standards. The District Court thus erred in dismissing Dukes' claim against the City.

¶70 Reversed and remanded.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART