No. 04-758

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 196

TRACI L. DUKES, as Personal Representative of the Estate of
KEITH DUKES, and on her own behalf and on behalf of TRACI
and KEITH DUKES'S minor children, JACOB DUKES and
KYLE DUKES; and SANDRA HENRY, as parent and legal
guardian of SKYLER HAUCKE DUKES, a minor,

Plaintiffs and Appellants,

v.

THE CITY OF MISSOULA, and FICTITIOUS DEFENDANTS A-D,

Defendants and Respondents.

APPEAL FROM: The District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 2000-90,
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Lon J. Dale and Philip B. Condra, Milodragovich, Dale,
Steinbrenner & Binney PC, Missoula, Montana

James T. Towe, Towe Law Offices, Missoula, Montana

For Respondents:

William L. Crowley, Boone Karlberg PC, Missoula, Montana

Submitted on Briefs: June 8, 2005

Decided: August 16, 2005

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellants Traci L. Dukes, as the personal representative of the Estate of Keith Dukes and on her own and her and Keith Dukes's minor children's behalf, and Sandra Henry, on behalf of her minor child (hereafter referred to as "Dukes"), brought this action against the City of Missoula (the City), Sirius Construction, Inc., Paradigm Architects, P.C., Carl Posewitz, the State of Montana, and the University of Montana. The City moved for summary judgment, and the District Court granted the City's motion. Dukes appeals. We affirm.

¶2 The parties raise three issues:

¶3 1. Did the City have a duty to inspect the scaffold under § 50-77-106, MCA (1997) (repealed 1999)?

¶4 2. Does the law of the case doctrine establish the City's duty to inspect?

¶5 3. Was the City negligent per se?

¶6 We will address, instead, the issue whether this appeal is moot.

## BACKGROUND

¶7 Keith Dukes (Keith) helped erect the scaffold that he was using in a construction project on the University Theatre at the University of Montana in February 1998. The scaffold was insufficiently wide for its height, and, instead of securing it together with bolts, the workers had used wire. The City knew nothing about the scaffold or its inadequacies. Keith and another employee were on top of the scaffold when they decided they needed to move it to another location. Instead of climbing down to move it, Keith and the other

2

employee at the top pulled the scaffold along while another employee pushed or pulled from the bottom. The scaffold fell over, and Keith was fatally injured. *Inter alia*, Dukes brought a negligence claim against the City under section 106 of Title 50, Chapter 77, Part 1, MCA (1997) (the Scaffold Act).

¶8    This is the second appeal to reach this Court concerning Keith's tragic death. In *Dukes v. Sirius Construction, Inc.*, 2003 MT 152, 316 Mont. 226, 73 P.3d 781, the City had moved the District Court to dismiss Dukes's complaint under Rule 12(b)(6), M.R.Civ.P., alleging that the Occupational Safety & Health Act of 1970, Pub. L. No. 91-596, 84 Stat. 1590 (1970) (codified at 29 U.S.C. §§ 651-678, 5 U.S.C. §§ 5108, 5314-15, 7902, 15 U.S.C. §§ 633, 636, 18 U.S.C. § 1114) (OSH Act), and that the regulations the Occupational Safety and Health Administration had promulgated thereunder had preempted any duties the Scaffold Act imposed on the City. We concluded that the OSH Act did not preempt any duties contained in § 50-77-106, MCA (1997) (repealed 1999).

¶9    In the meantime, Dukes had settled with Sirius Construction, Inc., for $1.8 million, and had stipulated to dismiss the State of Montana and the University of Montana with prejudice. The District Court had granted Paradigm Architects, P.C.'s, and Carl Posewitz's motions for summary judgment. After losing its Rule 12(b)(6), M.R.Civ.P., motion in this Court, the City moved for summary judgment alleging that the City owed no legal duty to Keith under the Scaffold Act, and Dukes moved for summary judgment alleging the City was negligent per se under that act. The District Court granted the City's motion and denied Dukes's motion.

3

¶10 The Legislature first enacted the Scaffold Act in 1909. Act approved Mar. 6, 1909, ch. 107, 1909 Mont. Laws 151 (codified at Title 50, Chapter 77, Part 1, MCA) (hereinafter 1909 Scaffold Act). Originally, the sentence imposing an enforcement duty on the City was part of the same section that imposed a monetary fine for violating the Scaffold Act. *See* 1909 Scaffold Act § 5; §§ 50-77-106 and 107, MCA (1997). The 1909 Scaffold Act, § 5, provided that

> [a]ny person violating any of the provisions of the foregoing Sections shall be fined not less than One Hundred Dollars nor more than Two Hundred Dollars for each offense. It is hereby made the duty of the building inspector, his deputy or other authorities in any county, city, town or village in the State, through the county attorney or any other attorney, in case of failure of such owner, person or corporation to comply with this Act promptly, to take the necessary steps to enforce the provisions of this act.

(Codified at § 69-1405, R.C.M. (1947), and §§ 50-77-106 to 107, MCA (1997).) The plaintiffs brought this case to determine the nature and extent of this duty.

## STANDARD OF REVIEW

¶11 The decision to grant summary judgment is a legal decision that we review *de novo*. *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 16, 327 Mont. 99, ¶ 16, 113 P.3d 275, ¶ 16. If the non-moving party fails to provide substantial evidence raising a genuine issue of material fact, the district court must decide whether the moving party is entitled to judgment as a matter of law. *Cole*, ¶ 16. Whether a party owed a legal duty to someone and the scope of that duty are questions of law. *Henricksen v. State*, 2004 MT 20, ¶ 21, 319 Mont. 307, ¶ 21, 84 P.3d 38, ¶ 21.

DISCUSSION

¶12 Dukes argues that, under the plain meaning of § 50-77-106, MCA (1997) (repealed 1999), the City had a legal duty to inspect the scaffold. The City avers that it had no duty, and, if it had a duty, that duty arises only upon notice to the City. Relevant portions of the Scaffold Act, read as follows:

> 50-77-101. **Scaffolds – definition – safety practices – liability.** (1) As used in this part, "scaffold" or "scaffolding" means a temporarily elevated platform and its supporting structure that is used on a construction site to support a person, material, or both. The term includes a ladder or other equipment that is the exclusive route of access to the scaffold but does not include any other ladder or other mobile construction equipment.
> (2) Employers and employees shall follow safety practices commonly recognized in the construction industry as well as applicable state and federal occupational safety laws.
> (3) Subject to the comparative negligence principles provided in Title 27, chapter 1, part 7, a contractor, subcontractor, or builder who uses or constructs a scaffold on a construction site is liable for damages sustained by any person who uses the scaffold, except a fellow employee or immediate employer, when the damages are caused by negligence of the contractor, subcontractor, or builder in the use or construction of the scaffold.
> (4) If a person dies from an injury caused by the negligent use or construction of a scaffold, the right of action survives and may be prosecuted and maintained by the decedent's heirs or personal representatives.
>
> . . . .
>
> 50-77-106. **Building inspector to enforce chapter.** It is hereby made the duty of the building inspector, his deputy, or other authorities in any county, city, town, or village in the state, through the county attorney or any other attorney, in case of failure of such owner, person, or corporation to comply with this chapter promptly, to take the necessary steps to enforce the provisions of this chapter.
>
> 50-77-107. **Penalty for violation.** Any person violating any of the provisions of the foregoing sections shall be fined not less than $100 or more than $200 for each offense.

¶13    It is noteworthy that, as of 1997, the codifiers had split the original § 5 of the 1909 Scaffold Act (which encompassed both the fine and the duty to enforce) into two separate statutes, thereby giving rise to the argument that the building inspector/county attorney's duty to enforce the provisions of the Scaffold Act was not limited to seeking statutory penalties. *See* 1909 Scaffold Act, § 5; §§ 50-77-106 to 107, MCA (1997).

¶14    Rather than restricting their scope to narrow clauses in a statutory scheme, courts will read the relevant statutes in their entireties; this gives courts the tools by which to effect the will of the Legislature. *Kokoszka v. Belford* (1973), 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, 381, *superseded by statute on other grounds*; *Carlson v. City of Bozeman*, 2001 MT 46, ¶ 15, 304 Mont. 277, ¶ 15, 20 P.3d 792, ¶ 15; William N. Eskridge, Jr., et al., Cases and Materials on Legislation 830 (3rd ed. 2002).  This canon of construction is the Whole Act Rule.  William N. Eskridge, Jr., et al., Cases and Materials on Legislation 830 (3rd ed. 2002).

¶15    Parties must present a justiciable controversy before a court can consider the merits of an issue, and this Court can question the justiciability of any controversy *sua sponte* because neither the United States Constitution nor the Montana Constitution has granted this Court the power to decide nonjusticiable questions. *Dennis v. Brown*, 2005 MT 85, ¶ 8, 326 Mont. 422, ¶ 8, 110 P.3d 17, ¶ 8; *see Roosevelt v. Dept. of Revenue*, 1999 MT 30, ¶ 47, 293 Mont. 240, ¶ 47, 975 P.2d 295, ¶ 47.  In this case, § 50-77-101(3), MCA (1997), and not § 50-77-106, MCA (1997) (repealed 1999), addresses liability under the Scaffold Act. Specifically, § 50-77-101(3), MCA (1997), lists three parties who are liable for injuries

caused by their negligence in using or constructing the scaffold: "a contractor, subcontractor, [and] builder."  Under the canon *expressio unius est exclusio alterius*, we interpret the expression of one thing in a statute to imply the exclusion of another.  *State v. Good*, 2004 MT 296, ¶ 17, 323 Mont. 378, ¶ 17, 100 P.3d 644, ¶ 17.  Clearly, the Legislature did not intend to impose liability on any "county, city, town, or village," under the Scaffold Act, or it would have listed those parties along with contractors, subcontractors, and builders.  *See Tate v. Ogg* (Va. 1938), 195 S.E. 496 (deciding that a statute applying to "any horse, mule, cattle, hog, sheep, or goat" did not apply to turkeys).

¶16   This interpretation of the Scaffold Act comports with our interpretation of the Scaffold Act in *State ex rel. Great Falls National Bank v. District Court* (1969), 154 Mont. 336, 344-45, 463 P.2d 326, 330-31 (interpreting the 1909 Scaffold Act codified at §§ 69-1401 to -1405, R.C.M. (1947)) (italics added), where we held:

> In our view neither the language nor the purpose of the Scaffold Act suggests any intention by the legislature to grant multiple remedies or damages to injured workmen by granting one recovery against the landowner, another recovery against the general contractor, a third recovery against the subcontractor using the scaffolding, and so on ad infinitum. On the contrary it is clear to us from the language of the Act construed in the light of its purpose that *the legislature intended only to make the injured workman whole by granting him relief to the extent of his injuries and damages against the person, firm or corporation having direct and immediate control of the work involving the use of scaffolding.*

We interpreted the Scaffold Act as requiring only those having direct and immediate control of the work involving the scaffold to make injured workers whole.  Under *Great Falls National Bank*, because the City had no control over the work, the statute did not require the City to make Keith whole.

7

¶17     The version of the Scaffold Act that we interpreted in *Great Falls National Bank* was even less specific at delineating liable parties than § 50-77-101(3), MCA (1997), but we interpreted the Scaffold Act to have delineated those parties nonetheless.  The version effective in February 1998 specifically listed the "contractor, subcontractor, [and] builder." Section 50-77-101(3), MCA (1997).  If the more general version of the Scaffold Act limited liability to "the person, firm or corporation having direct and immediate control of the work involving the use of scaffolding," as we concluded in *Great Falls National Bank*, 154 Mont. at 345, 463 P.2d at 331, *a fortiori*, the more specific version limits recovery to the contractor, subcontractor, and builder.

¶18     In arguing that the Scaffold Act imposed liability on the City for failing to inspect, the dissent cites to lobbyist statements.  In 1999, concerned over such liability, the Montana League of Cities and Towns successfully lobbied for the repeal of § 50-77-106, MCA (1997).  An Act Removing the Building Inspector Responsibility to Enforce the General Provisions of Construction Site Health and Safety; Repealing Section 50-77-106, MCA; and Providing an Immediate Effective Date:  Hearing on HB 229, Before the House Comm. on Bus. and Labor, 1999 Leg., 56th Sess. Jan. 14 p. 3 (Mont. 1999) (statement of Alec Hanson, proponent, League of Cities and Towns); Act Approved Apr. 5, 1999, ch. 232, 1999 Mont. Laws 748. Needless to say, interpretations of the law by legislative lobbyists are not binding on an appellate court.  Furthermore, contrary to the dissent's protestations, the question is not whether the Scaffold Act imposed a duty to inspect.  The question is, even assuming the

City had a duty to inspect, did violation of that duty give rise to liability for injuries to a worker?

¶19 Assuming the City had a duty to inspect the scaffold and assuming it breached that duty, Dukes's claim under the Scaffold Act must fail since the Scaffold Act imposes liability only on certain entities, not including cities. Section 50-77-101(3), MCA (1997). This holding is consistent with the fact that, as pointed out earlier, the Scaffold Act originally had one section that encompassed both the monetary penalty and the inspector's duty to enforce. The sentence requiring the building inspector, acting through the county attorney, to enforce the provisions of the Scaffold Act followed immediately after the establishment of the fine and must be read in that context. Since the Scaffold Act does not impose liability on cities, the questions whether the City had a duty to inspect under the Scaffold Act and whether it was negligent per se for violating that duty are moot. "This Court affirms a district court's results if those results are correct even if the district court reached that result for the wrong reason." *Dennis*, ¶ 6.

¶20 Affirmed.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY

9

/S/ JOHN WARNER
/S/ BRIAN MORRIS


Justice James C. Nelson dissents.

¶21    I dissent from our Opinion.

¶22    In deciding this matter on the basis of a theory and an issue not raised in the District Court, not utilized by the District Court, and not raised on appeal--justiciability/mootness-- this Court has turned the case on its head.

¶23    While § 50-77-101(3), MCA (1997), did limit liability for violations of the Scaffolding Act (the Act) to a contractor, subcontractor and builder, the violation of the Act is not and never was what this case is about. This case is about liability which must be imposed on the City of Missoula (the City) by reason of its building inspector's negligent failure to inspect and enforce the undisputedly faulty scaffolding at issue here.

¶24    In her Amended Complaint, Dukes claimed liability by the City by reason of the building inspector's negligence in failing to inspect. The City defended on that basis. The trial court ruled on that basis. The case was appealed--twice--on that basis. The City's involvement in this case was not about the negligent construction or use of scaffolding, but about the City's negligent failure to require the contractor, subcontractor and builder to comply with the Act. In creating from whole cloth the theory of justiciability/mootness to defeat the theory on which the case was actually litigated, our Opinion is just plain wrong.

10

¶25     We decided the issue actually litigated in favor of Dukes the first time this case was on appeal.  *Dukes v. Sirius Construction, Inc.*, 2003 MT 152, 316 Mont. 226, 73 P.3d 781 (*Dukes I*).  In *Dukes I*, a lengthy and scholarly Opinion, we held that the Occupational Safety and Health Act (OSHA) did not expressly or impliedly preempt the City's duty to inspect and enforce under the Act.  *Dukes I*, ¶¶ 28 and 68.  Indeed, we referred to this duty more than 30 times in our Opinion.

¶26     The duty to inspect under § 50-77-106, MCA (1997), is independent of liability under the Act for violations of the duty of the contractor, subcontractor and builder to provide safe scaffolding.  In other words, the contractor has a duty under the Act to provide safe scaffolding and, if the contractor does not provide safe scaffolding, then the City cannot be held liable.  However, under § 50-77-106, MCA, the City, acting through the building inspector, has a separate and independent duty to inspect and the City can be held liable for breach of that duty.  Here, if the building inspector had inspected, he would have found an improperly constructed scaffold and the improper use of that scaffold.  It is that duty–the inspector's duty to inspect as required by § 50-77-106, MCA–that is implicated here, not the contractor's separate duty to provide safe scaffolding.

¶27     For this Court to conclude that "[t]he Legislature did not intend to impose liability on any 'county, city, town, or village,'" is to ignore the express wording of § 50-77-106, MCA, that the building inspector has the duty "to take the necessary steps to enforce *the provisions of this chapter*."  (Emphasis added.)  To, in effect, hold that a building inspector must wait

11

until someone is injured or killed before the inspector has a duty to enforce the Act, nullifies the purpose of the Act--to provide for a safe work environment.

¶28    Obviously, in the litigation underlying *Dukes I*, the City thought it had a duty to inspect and enforce the Act.  The City moved to dismiss itself from that litigation by claiming that OSHA preempted that duty.  The trial court bought into that argument and granted the City's motion.  *Dukes I*, ¶ 1.  The appeal was filed raising that issue.  *Dukes I*, ¶ 3.  And, we reversed the decision of the District Court and remanded for further proceedings--*Dukes I*, ¶ 70--supposedly consistent with the law of the case which we established in our Opinion.

¶29    Moreover, the legislative history of the repeal of § 50-77-106, MCA (1997),[1] demonstrates that the Montana League of Cities and Towns--at whose behest the repeal was effected--clearly believed that the statute imposed a duty to inspect.  That organization's lobbyist told the Legislature that this law "required city building inspectors to go out and inspect construction sites."  Apparently, it never occurred to anyone--before this Court's novel, from-whole-cloth theory--that this case was nonjusticiable and moot from inception

---

[1]  The 1997 version of § 50-77-106,  MCA,  provided:

> **Building inspector to enforce chapter.**   It is hereby made the duty of the building inspector, his deputy, or other authorities in any county, city, town, or village in the state, through the county attorney or any other attorney, in case of failure of such owner, person, or corporation to comply with this chapter promptly, to take the necessary steps to enforce the provisions of this chapter.

This statute was repealed by the 1999 Legislature.  Sec. 1, Ch. 232, L. 1999.

12

because § 50-77-101(3), MCA (1997), limited liability for violations of the Act to the contractor, subcontractor and builder.

¶30    In *Dukes I*, if no duty to inspect existed *ab initio*, as our current Opinion appears to suggest, then there was nothing for OSHA to preempt.  More to the point, if there was no duty to inspect *ab initio*, then § 50-77-106, MCA, was meaningless; it was pure surplusage because whether the building inspector inspected or not, ultimately all liability was the contractor's; the statute to the contrary, the building inspector had no duty at all.  That is precisely why the Montana League of Cities and Towns got the Legislature to repeal § 50-77-106, MCA; the cities did not want to be stuck with the separate duty to inspect.

¶31    We've certainly made fools out of the Montana League of Cities and Towns and the the Legislature for repealing § 50-77-106, MCA (1997), not to mention the lawyers, the District Judge, and the members of this Court that were all dumb enough to waste their time and resources on *Dukes I*.

¶32    I would reverse this case on the issue that was actually litigated and raised on appeal and, at the very least, I would remand for trial.

¶33    I dissent.

/S/ JAMES C. NELSON

14